BEERS, *et al.*, v. WOLF, *et al.*, *Appellants.*

Division One, May 22, 1893.

1. **Contract**: SURETY: WAIVER. One who is in fact a surety may waive his rights as such and contract as a principal.

2. ———: ———: ———. The contract in question in this case *held* not to show that the sureties contracted as principals.

3. **Contract**: SURETY: CONSTRUCTION. The contract of a surety is to be construed according to what is fairly to be presumed to have been the understanding of the parties without any strict technical nicety.

4. ———: ———: CHANGE OF CONTRACT. A surety has, however, the right to stand on the strict terms of his contract, and if there is a departure therefrom he will be discharged and the rule is as applicable to building as to other contracts.

5. ———: ———: ———: DE MINIMIS NON CURAT LEX. A building contract considered and *held*, that the superintendent had no authority to make alterations in the construction without the consent of the sureties, and also that the changes were not of so slight a character as to permit the application of the maxim *de minimis non curat lex.*

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Seneca N. Taylor* for appellants.

(1) Wolf, Hayden and Reitz are sureties and are not principals on the contract in question. While a

surety may, waive his rights as surety, yet this was not done by the contract involved in this case. *McMillan v. Parkell*, 64 Mo. 286; *Picot v. Signiago*, 22 Mo. 593. (2) Where the instrument does not describe either of the makers as as "principal" or "surety" but contains joint promises on the part of both, evidence *aliunde* may be given showing that one of the makers was in fact surety for the other, and that the promisee knew this fact. In such case defenses peculiar to sureties obtain. *Savings Ass'n v. Helmrich*, 57 Mo. 100; *Barron v. Cady*, 40 Mich. 259; *Carpenter v. King*, 9 Met. 515; *Harris v. Brooks*, 21 Pick. 195; *Ward v. Statit*, 23 Ill. 409; Brandt on Suretyship, secs. 17–19. (3) The sureties' liability is dependent upon the identical contract being carried out, and any change therein without the consent of the surety, whether beneficial or injurious to his principal, discharges him. *Miller v. Stewart*, 9 Wheat. 702; *Nofsinger v. Hartnet*, 84 Mo. 552; *Bauer v. Cabanne*, 105 Mo. 118; *Blair v. Ins. Co.*, 10 Mo. 566; *Morgan v. Martien*, 32 Mo. 443; *State ex rel. v. Boon*, 44 Mo. 262; *Farrer v. Cramer*, 5 Mo. App. 167; *Gugerty v. Vieths*, 14 Mo. App. 577; *Warden v. Ryan*, 37 Mo. App. 466; *Ide v. Churchhill*, 14 Ohio St. 383; *Bartholl v. Dodier*, 10 Ga. 236. (4) It cannot be contended successfully by the respondents that the additions and alterations were of such a trifling character as that the law will not regard them on the maxim *de minimis non curat lex*. It has never been held that a sum equal to $200 would fall within the maxim. Moreover, adding any substantial sum to the obligation of the surety has always been held to discharge the security. *Picket v. Breckenridge*, 22 Pick. 298; *Cherry v. Stephens*, 97 Mass. 83; *Evans v. Fortman*, 30 Mo. 449; *Bank v. Armstrong*, 62 Mo. 59; *Bank v. Fricke*, 75 Mo. 178.

*Chester H. Krum* and *M. B. Jonas* for respondent.

(1) The contract authorizes changes in plans of construction. See *Cemetery Co. v. Cabane*, 7 Md. 202; *Building Ass'n v. Fitzmaurice*, 7 Mo. App. 285. (2) The changes in the construction were not material, and hence did not avoid the contract. (3) It is not clear that the appellants, Wolf, Hayden and Reitz, are sureties. They are named with the contractors, for whom they say they only became sureties as "parties of the second part." Their obligation is conditioned for the faithful performance of a building contract.

BLACK, P. J.—The plaintiff entered into a contract with the defendants, whereby they agreed to furnish all the labor and materials, and build and complete an addition to a hotel, according to the plans, elevations and specifications furnished by the superintending architect; for which the plaintiff agreed to pay them the sum of $31,070, in installments as the work progressed. The defendants, Strimple & Son, proceeded with the work until nearly completed and then abandoned it, leaving unpaid bills. The plaintiff was obliged to employ others to complete the work and to lay out money in the discharge of mechanic's liens created by the Strimples, and hence this suit. The Strimples made no defense. Wolf, Hayden and Reitz defend on the ground that they were sureties for the Strimples and that the plaintiff and the Strimples altered and changed the terms of the contract without their knowledge or consent.

The contract describes the defendants as "Joab Strimples & Son, principals, and A. Wolf, T. F. Hayden and John Reitz, sureties, parties of the second part." The agreements throughout the contract are expressed to be by and between the parties of the first

part and "the parties of the second part" until it speaks of the final payments, when it provides: "The last two payments to be paid on orders of said *principal* second parties, on the party of the first part, through orders of the superintendent."

By agreement the cause was heard by a referee, who found for the plaintiff as against the Strimples in the sum of $5,203.54; and, as to the affirmative defense, he found that the plaintiff and the Strimples made, without the knowledge or consent of the other defendants, changes and alterations in the plans and specifications forming a part of the contract as follows:

"*First*. The large sliding doors provided by the plans for the dining room were omitted, and a pair of smaller sliding doors inserted in the room on the second floor used for a parlor, the smaller doors being less costly than the doors omitted.

*Second*. The closets in the rooms on the second floor were differently arranged, and the doors, as you enter from the old building on the third, fourth and fifth floors were changed, so as to face the opening from the old building instead of being around on the north side coming from the hall.

*Third*. That by reason of the bottom of the basement being lower than the sewer for the new building, a bulk-head was put in the basement to enable the plumber to connect with the sewer for said addition.

*Fourth*. That flitch-plates provided for the fifth story were omitted from that story, and used in the openings of the first story to form girders instead of lintels.

*Fifth*. The closets in said addition were made six inches deeper than provided for by said plans.

*Sixth*. The basement of said addition was made six inches deeper than provided for by said plans.

From the evidence, the referee is unable to determine what, if any, extra costs were added to the contract price, by reason of the changes, additions and alterations specified under division first, second, third and fourth, and hence finds the fact to be that such changes, alterations and additions, were made without adding extra cost to said contract price. The referee finds that the changes, alterations and additions named under divisions fifth and sixth, added to the contract price for the construction of said addition, the sum of $221.61, which said sum was an extra for the material and labor in doing sixty-three and eighteen one hundredths square yards of plastering at thirty-five cents per square yard, made necessary by such changes alterations and additions in and to said new addition, not originally provided for by said plans."

As a matter of law the referee found that the sureties were discharged because of these changes and alterations. To this conclusion of law the plaintiff excepted and the exception was sustained, and the court gave judgment against all of the defendants for $4,431.

1. The first question is, did the appellants contract as principals, so as to waive their rights as sureties. One who is in reality a surety may contract as a principal. He may waive the rights which the law throws around a surety, for such a waiver has nothing in it offensive to the law; and the surety does waive such rights when he in terms contracts and agrees to be bound as principal. *Picot v. Signiago*, 22 Mo. 587; *McMillan v. Parkell*, 64 Mo. 286; Brandt on Suretyship, sec. 28. But in this case the appellants did not waive their rights as sureties. They are in the beginning of the contract described as sureties, and when we come to the agreements concerning the last two payments the distinction between principal and sureties is

again shown; and there is no statement in the contract to the effect that they contract as principals. As they are described in the contract as sureties, it must appear from other parts thereof that they agreed to be bound as principals before it can be said that they waived any of their rights as sureties. The contract contains no statement to the effect that they bound themselves as principals, and they must have accorded to them all the rights of sureties.

2. It is contended on behalf of the plaintiff that the superintendent had the right to make changes in the plans and specifications without consulting the sureties. Whether he had such right or not must depend upon a proper construction of the contract. As there is a dispute as to the meaning of the contract, it may be stated here, that the contract of a surety must be construed like any other contract, that is to say, according to the intent of the parties. There should be no strained construction in order to release or hold the surety. The contract of the surety is "to be construed according to what is fairly to be presumed to have been the nnderstanding of the parties, without any strict technical nicety." *Lee v. Dick*, 10 Pet. 482; *Lionberger v. Krieger*, 88 Mo. 160; *Locke v. McVean*, 33 Mich. 473. "The rules for construing the contract of a surety or a guarantor, should by no means be confounded with the rule that sureties and guarantors are favorites of the law, and have a right to stand upon the strict terms of their obligations. * * * In the construction of the contract of a surety or guarantor, as well as of every other contract, the true question is: What was the intention of the parties, as disclosed by the instrument read in the light of the surrounding circumstances? * * * The meaning of the words is not affected by the fact that the party sought to be

charged is principal, surety or guarantor.'' Brandt on Suretyship [1 Ed.], sec. 80.

Guided by these principles we come to the contract, which contains the following stipulations: ''The superintendent shall be at liberty to make any deviation from, or alteration in, the plan, form, construction, detail and execution, described by the drawings and specifications without invalidating or rendering void this contract, and in case of any difference in the expense, an addition to or abatement from the contract price shall be made, and the same shall be determined by the architect. And in case any such alteration or change shall be made or directed by the said superintendent as aforesaid, in the plans, drawings and construction of the aforesaid building, and in case of any omission or addition to said building being required by said superintendent, the cost and expense thereof is to be agreed upon in writing, and such agreement is to be signed by said parties of the second part and superintendent before the same is done or before any allowance therefor can be claimed; and in case of any failure so to agree, the same shall be completed upon the original plan.''

The first sentence provides in clear terms that the superintendent may make deviations from, and alterations in, the drawings and specifications without invalidating the contract; and in case of any difference in the expense, an addition to or abatement from the contract price shall be made, the same to be determined by the architect, meaning the superintendent, he being the architect. Nothing more appearing, the meaning would be that the superintendent had the right to make changes and alterations, and fix the amount to be added to, or deducted from the contract price by reason thereof. Had the parties stopped here, it is manifest that changes and alterations made in the work by

the superintendent would not release the sureties. But the contract does not end here. It goes on to say, in case of any such alteration or change dictated by the superintendent, the cost and expense thereof must be agreed upon in writing, and such agreement must be signed by "said parties of the second part and superintendent" before the work is done or any allowance made therefor; "and in case of any failure so to agree, the same shall be completed upon the original plan." This agreement is clear to the effect that before there can be any alteration or change in the plans, drawings or specifications, the cost must be agreed upon by the superintendent on the one hand and the parties of the second part on the other. The two sentences taken together confer the right to make alterations upon the superintendent, not the plaintiff; but before any alterations are made the cost must be agreed upon in writing by him and the parties of the second part. This must be the meaning of the contract, taken as a whole, for the proposition is clearly expressed and made prominent in the contract, that before alterations or changes are made, the cost must be agreed upon in writing, signed by the parties of the second part and superintendent. The words "parties of the second part" include all of the defendants. We can find nothing in the contract to justify us in saying they mean the Strimples only. The contract therefore makes no provision for changes or alterations, except with the consent of the sureties. On the contrary, it expressly provides that they are to be consulted on all such matters. Such are the terms upon which they agreed to become bound as sureties, and on which they have a right to stand.

The finding of the referee shows that a number of changes and alterations were made, and that, too, without the knowledge or consent of the sureties. The

law is well settled that a surety has the right to stand upon the strict terms of his contract; and if a variation is made without his consent, he is discharged. The principle applies to these building contracts the same as to other contracts. *Taylor v. Jeter*, 23 Mo. 244; *Simonson v. Grant*, 36 Minn. 439; *Ryan v. Morton*, 65 Tex. 258. A subsequent independent agreement of the principal, to do other and different work for the same person, would not discharge the surety; because in such case the contract of the surety would remain the same. Here the changes and alterations were made in the terms of the very contract for the performance of which the appellants were bound as sureties; and it follows from what has been said they stand discharged and released by reason of the alterations and changes made without their consent.

The circuit court gave judgment against all of the defendants on the theory that the changes were so slight that they were immaterial, applying the maxim, *de minimis non curat lex.* There was certainly a change of six inches in the depth of the basement and in the depth of the closets, and these changes made an additional cost in the plastering alone of $221.61. The change in the depth of the basement also added the cost of a bulk-head in order to secure sewer connections. The closets on second floor were differently arranged. How many closets there were, the record does not disclose, but it may be fairly presumed that there were many of them, as the structure was an addition to a hotel. Can it be said these changes, taken as a whole, were so small that the law will take no notice of them? We think not. No case to which we are cited will justify any such conclusion. To a suit to recover the expense brought about by these alterations, it would be no answer to say that they were immaterial. These changes destroyed the identity of

State v. Oliver.

the contract, and that is sufficient to discharge the sureties.

The judgment is reversed and the cause remanded with directions to enter judgment on the report of the referee in favor of the sureties, but in favor of the plaintiff as against the Strimples.    All concur.