Fullerton Lumber Co. v. Gates.

---

FULLERTON LUMBER COMPANY, Appellants, v. JAMES E. GATES et al., Respondents.

| 89 | 201 |
| 96 | [2]470 |
| 96 | [2]471 |

Kansas City Court of Appeals, May 6, 1901. '

1. **Mechanics' Liens: CONTRACTOR'S BONDSMEN: SETOFF.** A surety on a contractor's bond may enforce a mechanics' lien against the owner of the building where the latter has not paid out the contract price; but if the owner has been damaged so that the surety would be liable, such sum may be deducted from the contract price in ascertaining whether the owner has anything in his hands due the contractor.

2. **Principal and Surety: ALTERATIONS OF CONTRACT: SURETY'S CONSENT.** A surety has the right to stand upon the letter of the contract, but when the contract contemplates its alteration, such alteration does not affect the surety's liability.

3. ———: ———: **SURETY DISCHARGED.** When by its terms, a contract is subject to alteration, the alterations must be made in compliance with the contract or the surety is discharged.

4. ———: ———: ———: **TRIVIAL CHANGE.** A mere trivial change of a contract, though not made in compliance with the terms of the contract, will not discharge the surety; but a material change, such as the deepening of a foundation, increasing the cost of brick $88, is a material change and would discharge the surety.

5. ———: ———: ———: **ARCHITECT'S UNAUTHORIZED ACT.** Where an architect in charge of a building, in violation of the terms

of a contract, makes changes in the contract without the owner's consent, he goes beyond his agency and in nowise binds the owner of the building and does not discharge the surety.

6. ———: ———: ———: HUSBAND AND WIFE: AGENCY. Evidence is reviewed and the owner is found to have been represented by her husband as her agent, and, therefore, to have been cognizant of the making of certain changes in the contract which were material, and which, not being made as required by the contract, discharges the sureties.

7. ———: ———: ———: SUBSEQUENT AND INDEPENDENT AGREEMENT. A subsequent, independent agreement of the parties to do other and different work for the owner will not discharge the sureties even though done on the same building.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,.* Judge.

REVERSED.

*Stauber, Crandall & Strop* for appellants.

(1) The sureties were released in this case because the owner terminated the contract in a manner other than as provided by the contract. The sureties had the right to insist that they were bound to the extent, in the manner and under the circumstances pointed out in the contract, and no further. Simonson v. Grant, 36 Minn. 442; Warden v. Ryan, 37 Mo. App. 466. (2) That portion of the contract which prescribed how the contract should be terminated, was for the protection of the owner, and being for the owner's protection is likewise for the protection of the surety, and a deviation therefrom avoided the contract. Ryan v. Morton, 65 Tex. 262; Bragg v. Shain, 49 Cal. 131. (3) Any change in the contract releases the surety, even though it was for his benefit. Warden v. Ryan, 37 Mo. App. 466; Taylor v. Jeter, 23 Mo. 244;

Fullerton Lumber Co. v. Gates.

Evans v. Graden, 125 Mo. 76; Brandt on Suretyship (2 Ed.), sec. 397, and cases cited. (4) Any change in the plans and specifications, or manner of construction of the building, releases the surety. Killoren v. Meehan, 55 Mo. App. 429; Eldridge v. Fuhr, 59 Mo. App. 44; Beers v. Wolf, 116 Mo. 179; Kane v. Thuener, 62 Mo. App. 69. (5) The court erred in submitting to the jury the question of the materiality of the changes proven. The instruction here referred to is instruction number four given in behalf of defendants. Beers v. Wolf, 116 Mo. 186; Eldridge v. Fuhr, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 428.

*B. R. Vineyard* for respondents.

(1) This court, in holding that a substantial compliance with the requirements of a building contract is all that is necessary to sustain a recovery on the contract, says, in reference to the word "substantial:" "The word is one of common use and well understood by the man of ordinary intelligence. The jury would understand that they were to ignore mere unimportant deviations from the plans and specifications, and were to take notice of such only as were material and substantial." Lumber Co. v. Snyder, 65 Mo. App. 577, 578; Boteler v. Roy, 40 Mo. App. loc. cit. 238; Smith v. School District, 20 Conn. 312; Crouch v. Gutman, 134 N. Y. 45; Leeds v. Little, 42 Minn. 414; Cullen v. Sears, 112 Mass. loc. cit. 308. And in thus holding, the courts do not vary or change the contract. (2) And, as to whether defects are so trival and departures from the requirements of the contract are so slight as not to defeat the claim of a substantial compliance with the contract, are questions of fact for the jury. Johnson v. Peyster, 50 N. Y. 666; Rose v. O'Riley, 111 Mass. 57; Phillip v. Gallant, 62 N. Y. 264; Woodward v. Fuller, 80 N. Y. loc. cit. 316;

Elliott v. Caldwell, 43 Minn. loc. cit. 360. (3) In all cases, where securities on the bond of a building contractor are declared to have been released from the obligations of the bond, by changes in the contract, the changes have been found to have been so material as to destroy the identity of the undertaking. Timmerberg v. Schramm, 71 Mo. App. loc. cit. 90; Bowman v. Heating Co., 80 Mo. App. 628; Beers v. Wolf, 116 Mo. 179.

ELLISON, J.—Defendant Gates was the contractor to erect a building for defendant, Mrs. Harrison. Plaintiff furnished material to Gates for the building and seeks now to enforce a mechanic's lien against the property for $832.06. Gates gave a bond for the faithful performance of his contract according to specifications, and plaintiffs were his sureties on this bond. Gates made no defense, and personal judgment was rendered against him for the amount claimed. Mrs. Harrison defended by asking an allowance for damages for certain violations of the contract by Gates, claiming that plaintiffs were liable for such violations by reason of being Gates' sureties. Plaintiffs by way of reply alleged that they had been released from the bond by reason of certain changes in the contract made by direction of Mrs. Harrison, without their knowledge or consent, and that they therefore were not liable for any breaches. The result of the trial in the circuit court was a finding that plaintiffs had not been released from the bond and that defendant had been damaged in a sum sufficient to reduce plaintiffs' claim to $235, for which sum judgment was given and for the enforcement of the lien therefor. Defendant Harrison acquiesced in the judgment but plaintiffs appealed.

The principal grounds stated by plaintiffs in support of their claim of release as sureties on Gates' bond are that there were changes made in the contract without their consent; and

that Mrs. Harrison herself committed breaches by refusing to pay certain orders given by the supervising architects for money due to Gates; and that before Gates had been able to finish his work Mrs. Harrison interfered and prevented his full compliance with the contract. The contract provided that no alteration or changes should be made in the plans and specifications except upon the written order of the architects. These plaintiffs being sureties on the contractor's bond, whereby they obligated themselves that he should comply with his contract by paying his bills and prevent mechanic's liens, appear to be doing the very thing they have agreed should not be done, or if done they would make good. But it seems to be the law in this State that such surety may himself enforce a mechanic's lien in instances where the owner has not paid out the contract price, for a sum not exceeding what remains in the hands of the owner. Hartman v. Berry, 56 Mo. 487. But if the owner has paid out the contract price he can not do so. Handley v. Ward, 70 Mo. App. 146. So, if the owner has been damaged in such manner as the surety would be liable therefor, that sum may be deducted from the contract price in ascertaining whether the owner has anything in his hands due the contractor.

The law is, that a surety has the right to stand upon the letter of the contract and that any alteration thereof without his consent, even though designed for his benefit, will discharge him. But it should be always understood in connection with this statement, that when the contract itself contemplates its alteration, then it may be altered without affecting the liability of the surety. In this case the contract itself contemplates changes and alterations by the following provision: "Art. 3. No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects, and when so made, the value of the work added or omitted shall be computed by the architects,

and the amount so ascertained shall be added to or deducted from the contract price. In the case of dissent from such award by either party hereto, the valuation of the work added or omitted, shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expenses of such reference."

If an alteration was made in the manner provided by this provision, such alteration would be a part of the contract which the surety has agreed shall be performed and his liability on the contract remains. But if the change or alteration was not made as provided, the surety would be discharged, for it would be an alteration without his consent. The case of Beers v. Wolf, 116 Mo. 179, presented the question here under consideration, and though the contract there was not in the language of the provision just quoted, the opinion by Judge BLACK fully sustains what we have said. And so, also, does the case of Eldridge v. Fuhr, 59 Mo. App. 44. There was evidence showing that changes and alterations in the contract had been made under the direction of Mrs. Harrison or her agents which were made without pretense of complying with the provision above quoted. The plaintiffs as sureties were therefore discharged, unless from the following considerations:

It is claimed by defendants that the alterations were of such trivial, inconsequential and unsubstantial character that notice should not be taken of them, and in this view the trial court gave instructions which left to the jury to say whether the changes were "material" or "substantial." There was evidence tending to show that the specifications for the foundation were changed so as to deepen it and require an extra number of brick at a cost of $88.80. This change was made in a manner not provided for; it was material and should have been so

declared by the court. The sums which the uncontradicted evidence shows were paid for many of the changes made in this case are sufficiently large to justify the court in declaring them substantial.

But it is said that the changes and alterations referred to were not made with Mrs. Harrison's knowledge or consent. That though they may have been directed by the architect, yet as such direction was not given in writing and was otherwise not as contemplated by the contract, the work made no claim against Mrs. Harrison, the owner, nor her building. If an architect acts as here contended by defendants, he goes beyond his agency and in nowise binds the owner or the building. Saxton v. Cook County, 114 Ill. 174; Starkweather v. Goodman, 48 Conn. 101; Sutherland v. Morris, 45 Hun. 259; White v. San Rafael, 50 Cal. 417; Woodruff v. Railroad, 108 N. Y. 39; Abbott v. Gatch, 13 Md. 314; Condon v. Jersey City, 43 N. J. L. 452. And in such case there would not be a change of the contract, and the sureties for the contractor would not be discharged.

But we regard the record as disclosing that Mrs. Harrison's husband was her agent, acting for her in general charge of the construction of the building. The evidence for plaintiff showed this, *and defendant introduced him as a witness, examining him as to the entire controversy.* This was done, as shown by the record, on the assumption that he was her agent, thus making him competent. In addition to this, Mrs. Harrison herself, though qualifying her statements, did finally concede that he was her agent. We, therefore, repeat that the evidence showing without contradiction that these material changes were made without pretense of complying with the provision of the contract above quoted, or any portion thereof, the court should have given plaintiff's instruction "Y" declaring the plaintiffs were discharged as sureties.

In so deciding we are not unmindful of the further contention on defendants' part that the new and different work was not a change of the original contract, but a subsequent independent contract having no connection with the original. This contention is right as to some of the work. The evidence disclosed that a retaining wall was built by the contractor on an agreement or arrangement between him and Mrs. Harrison. This wall was not provided for or contemplated by the contract. It was an after-consideration and was independent of the contract and not connected therewith. "A subsequent independent agreement of the principal to do other and different work for the same person, will not discharge the surety." Beers v. Wolf, supra. Where a subsequent contract was made for two galleries and the price was not included in the original contract for the building, it was held that, though the work was done on the same building, it was an independent contract. Ryan v. Morton, 65 Texas, cited with approval in Leavel v. Porter, 52 Mo. App. 641.

It is sometimes difficult to say when a certain work constitutes a change in the original contract, or is a subsequent disconnected contract, without bearing a relation to the original. Without pretending to state a rule applicable to all cases, we will say that where the different matter does not consist of a change of that provided for or contemplated by the contract, but is something additional not included in the contract, then it is an independent transaction and does not affect the contract and consequently does not release the surety. Thus, if a building contract did not include painting and, afterwards, the owner and contractor, as an independent matter, should contract for painting at a stated price, it could not affect the original and would not discharge the surety. In view of the foregoing, the contract for the retaining wall ought not to be regarded as discharging plaintiffs as sureties.

But on the other hand, the foundation of the building, and other parts materially changed, were a part of the contract and the change of the specifications for such foundation, whereby its depth and cost were increased, was clearly an interference with and alteration of the contract for the building, as has been already stated. An examination of the evidence shows that the particulars of the demands and requirements of the contract seem to have been altogether abandoned or ignored. It would be in the face of all precedent to refuse to discharge sureties in such circumstances.

The judgment will be reversed and the cause remanded. All concur.