KINGMAN ST. LOUIS IMPLEMENT COMPANY,
Appellant, v. McMASTER, ALSUP and GRANT-
HAM, Respondents.

St. Louis Court of Appeals, April 24, 1906.

1. **CONTRACTS: Guaranty: Sureties.** A contract, executed by
the "sureties and guarantors" for the agent of an implement
house, is set out in full and *held* that it was a sufficient under-
taking to bind such sureties to pay an indebtedness of the
agent to his principal, which accrued on account of sales of the
principal's goods by him.

2. ———: ———: ———: **Release of Security.** The taking of
collateral notes as security for the payment of a debt due by
an agent to his principal, did not discharge the sureties and
guarantors who had by contract bound themselves for such
debt on behalf of the agent.

Appeal from Greene Circuit Court. — *Hon. James T.
Neville,* Judge.

REVERSED AND REMANDED.

*W. D. Hubbard, A. S. Cowden* and *Ellis, Cook &
Ellis* for appellant.

(1) The "guarantee contract" sued on must be
construed as a whole. Styling the obligors "guarantors"
or "sureties" does not of itself make them such. The
nature of their liability and obligation, and the rights
of appellant, must be ascertained from the instrument
read as a whole. 2 Pars. Cont. (7 Ed.), 633; (6 Ed.),
501; 17 Am. and Eng. Ency. (2 Ed.), p. 4, et seq., title
"Interpretation and Construction." (2) Clearly Alsup
and Grantham were not guarantors, though styled such,
because, of necessity, the obligation of a guarantor is
evidenced by a separate instrument and upon a differ-
ent consideration; when bound in the same instrument

118 App—14

with his principal, he is not a guarantor. 1 Brandt, Suretyship and Guar., sec. 1, p. 3. (3) The law sanctions and is no wise jealous of, an arrangement whereby a surety or guarantor in fact waives his right as such and binds himself primarily and as a principal. In such case he is to be held throughout as a principal. McMillan v. Parkell, 64 Mo. 286; Globe Printing Co. v. Bickley, 73 Mo. App. 499-502; 1 Brandt, Suretyship and Guar., sec. 41, p. 55, et seq.    (4)    The so-called "guarantee contract" makes all the obligors, as to appellant, joint principals. It makes them by its terms liable to appellant "in the first instance" and they agree to pay "any indebtedness which may be or become due in the premises or upon any transactions or transactions growing out of or pertaining to the business relations between the parties." The sale of appellant's goods by McMaster for notes which he indorsed over and the liability thus fixed for the sale of the goods "grew out of the business relations between the parties" and the respondents are bound by their contract to pay that liability. Picot v. Signiago, 22 Mo. 587; Peoria Rubber Mfg. Co. v. Deering, 85 Mo. App. 131.

*G. A. Watson* for respondents Alsup and Grantham.

(1)    The court committed no error in holding that the petition states no cause of action against Alsup and Grantham, their liability being limited by the conditions of the guaranty bond, strictly construed.    Mitchell & Bros. v. Railton, 45 Mo. App. 275.    (2)    When appellant accepted the "farmers' notes" with McMaster's guaranty to become liable for any extension or renewal, McMaster's liability was thereby increased.    Koenig v. Bramlett, 20 Mo. App. 636.    Alsup and Grantham were thereby and  thereafter released whether  sureties or guarantors. Beers v. Wolf, 116 Mo. 179, 22 S. W. 620. This is true whether the change in the relations between

McMaster and appellants was beneficial or injurious to Alsup and Grantham, they having the right to judge for themselves under what circumstances they were willing to be held. Parsons' Contracts (7 Ed.), p. 17. Ratification of McMaster's act in guaranteeing the notes or acquiescence in such action by Alsup and Grantham would not make them liable for such action. Shine's Adm'r v. Bank, 70 Mo. 524.

STATEMENT. — Plaintiff is a Missouri corporation engaged in selling farm implements, in the city of St. Louis. Defendant C. J. McMaster, prior to and at the dates hereinafter mentioned, was engaged in the implement business in the city of Springfield, Missouri, under the name of the Springfield Implement & Buggy Company. Prior to April, 1901, McMaster had been handling the plaintiff's goods and became indebted to it. He was desirous of continuing the business of selling plaintiff's implements, but the company refused to furnish him any more goods unless he would give security for the payment of all its merchandise he might sell in the future. The defendants J. B. Alsup and T. A. H. Grantham agreed to become sureties for him and, on the sixteenth day of April, 1901, a contract was entered into, the material parts of which, for the purposes of this case, are as follows:

"Memorandum agreement, made and entered into this 16th day of April, 1901, by and between the Kingman-St. Louis Implement Co., St. Louis, Missouri, party of the first part, and C. J. McMaster, Springfield, Missouri, party of the second part, and T. A. H. Grantham and J. B. Alsup, as guarantors, witnesseth:

"1. Party of the first part agrees to ship to the party of the second part a reasonable amount of goods, consisting of general line of implements, vehicles, binder twine, rope, pumps, etc., as will constitute a suitable stock in accordance with the judgment of the party of

the first part for transfer purposes to meet the requirements of the trade of the party of the first part tributary to Springfield.

"2. Party of the second part agrees to receive, store and pay the freight on all such goods and transfer them as directed by party of the first part or on orders from such agents as they designate. Routing to be left as far as possible to the party of the second part. When specified, the routing named by party of the first part is to be used by the party of the second part in shipping. Reports of all goods transferred to be made by the party of the second part daily. . . .

"5. It is further agreed and understood that out of such stock as shipped by the party of the first part to the party of the second part in accordance with the specifications of a supplemental contract, which is a part hereof, the party of the second part has a right to sell all of such goods as he may have a demand for, the prices and terms of such settlement on such goods to be governed by the prices and terms agreed upon in the supplemental contract.

"6. It is further agreed and expressly understood that the party of the second part will furnish a suitable storage room adapted for the retailing as well as transferring of goods, and advantageously located for the retail as well as transfer business.

"7. It is further agreed that the party of the second part will store all goods shipped to him by the party of the first part free of charge, to reimburse the party of the first part for the cost of $2,000 worth of insurance. This agreement as to insurance to apply to the extent to taxes. . . . .

"12. It is expressly agreed and understood by the party of the second part and his guarantors that the guarantee contract of even date herewith especially applies to all business transacted by the supplemental contracts of any kind.

(Signed)          "KINGMAN-ST. LOUIS IMPLEMENT CO.,
                  "By J. N. BURNES, V. P.
                  "C. J. MCMASTER,
                  "J. B. ALSUP,
                  "T. A. H. GRANTHAM."
"Witness:   V. M. Battson.

"GUARANTEE CONTRACT.
"Springfield, Mo., April 16, 1901.

"In consideration that the Kingman-St. Louis Implement Company, hereinafter referred to as 'The Company' does, or may appoint C. J. McMaster, of Springfield, Missouri, the company's agent, at Springfield, Missouri, to sell the company's goods or to sell goods shipped or sent to him at Springfield or elsewhere, and to transact such business at that place and in that vicinity as the company may require or request of him, and in consideration that the company do or may sell, send or deliver to him goods from time to time as the company shall elect and desire.

"Now, therefore, we, the undersigned, do hereby become surety and guarantor for the said C. J. McMaster, and do moreover agree and obligate ourselves and become liable to the company for the payment of any and all indebtedness for or on account of goods or property sold or disposed of by C. J. McMaster, and that we will be and become in the first instance, and we do hereby become so liable, and agree to pay the company any indebtedness which may be, or become due to them in the premises, or upon any transaction growing out of or pertaining to the business relations between the parties aforesaid, pursuant to the contract between said parties, and that we will save and keep harmless the company because of any such indebtedness, whether upon note, bill or open account in the premises, and we do hereby expressly waive notice of the acceptance hereof by the company and likewise any notice of such sales,

shipments or delivery of property by the company or the accruing of any such indebtedness.

(Signed)

"C. J. McMaster,          (Seal)

"J. B. Alsup,             (Seal)

"T. A. H. Grantham.  (Seal)

"Witness:   V. M. Battson.

Approved 7-8-01.

Kingman-St. Louis Implement Co.,

"I. N. Burnes," V. P. and Mgr."

On the fourteenth day of March, 1902, a duplicate of this one-year contract was executed by all the parties, to continue in force for one year thereafter. During the two years McMaster sold in the neighborhood of fifteen thousand dollars' worth of plaintiff's goods, in territory contiguous to the city of Springfield. A considerable portion of his sales were on credit, for which sales he took the buyers' promissory notes. At the expiration of each month, during the life of the two contracts, the traveling salesman and agent of plaintiff called upon McMaster, checked up the stock on hand, ascertained the goods he had sold and the amount of his indebtedness to the plaintiff on account of such sales, and squared the account by taking what cash McMaster had to pay and the farmers' notes taken by McMaster for the balance. This mode of adjusting the accounts continued during the life of the two contracts. The total amount of notes turned over by McMaster to the plaintiff was about eight thousand dollars. A considerable amount of these notes proved uncollectible and this suit is to recover the balance due plaintiff by McMaster, as shown by the uncollected notes, which were attached to and filed with the petition as exhibits and as evidence of the amount due. Each of the notes was indorsed as follows: "For value received, I hereby guarantee the payment of the within note and any renewal of the same, and hereby waive protest, demand and notice of demand

and non-payment, and suit against the maker, and consent that the payment of the note may be extended from time to time, without affecting my liability thereon.— Springfield Implement & Buggy Co., by C. J. McMaster." The notes thus indorsed and delivered to plaintiff were not to specially cover any particular sale or sales of any specified implements sold to any individual purchaser, but to square the monthly account of all sales made for the previous month. Plaintiff's evidence tends to show that this arrangement was entered into for the reason it would afford it additional security and would be better for all parties concerned; and that Alsup was notified of the arrangement and did not object. .

McMaster testified that Roberts (plaintiff's agent) said to him: "Mc," he says, "I just came up from St. Louis and the folks down there," he says, "while they think Mr. Grantham and Mr. Alsup are all right," he says, "you understand a man can get rid of his estate in a few hours if he wants to, and," he says, "the notes are accumulating," and he called the amount — seven or eight thousand dollars — and he says, "they have come to the conclusion that they would rather have you just turn over the farmers' paper and lessen their liability in place of the bond." "I says, 'well, Frank, that is all right. I would rather do it," and that is all that was said about it. So I made my settlement and commenced with that month, I think, and we made our settlements and I paid him all the money I had, and turned him over the farmers' paper to square the account, and from that time on the close of the business every month's settlement was made the same way."

The suit, as above stated, is not on the uncollected notes, but is based on the contracts of April 16, 1901, and March 14, 1902, and alleges, in separate counts, the accrual of the indebtedness from McMaster to plaintiff under each of said contracts, the notes being filed merely as exhibits and offered in evidence as proof of plaintiff's damages. The court to whom the issues were submitted,

found, at the close of all the evidence, that the petition did not state facts sufficient to constitute any cause of action, and rendered judgment for the defendants. The plaintiff appealed in the usual way.

BLAND, P. J. (after stating the facts).—Plaintiff's right to recover, if any it has, depends upon the construction that should be given to the contracts. In the memorandum agreement, Alsup and Grantham are called "guarantors;" in the guarantee or supplemental contract, from which we think the measure of their liability must be determined, they are called "sureties and guarantors," and in consideration of the premises (set out) they say: "We, the undersigned, do hereby become surety and guarantor for the said C. J. McMaster, and do moreover agree and obligate ourselves and become liable to the company for the payment of any and all indebtedness for or on account of goods or property sold or disposed of by C. J. McMaster, and that we will be and become in the first instance, and we do hereby become so liable, and agree to pay the company any indebtedness which may be, or become due to them in the premises, or upon any transaction growing out of or pertaining to the business relations between the parties aforesaid, pursuant to the contract between said parties, and that we will save and keep harmless the company because of any such indebtedness, whether upon note, bill or open account in the premises, and we do hereby expressly waive notice of the acceptance hereof by the company and likewise any notice of such sales, shipments or delivery of property by the company or the accruing of any such indebtedness." It seems to us that this undertaking is broad enough to bind Alsup and Grantham, as sureties, to pay any indebtedness of McMaster to the plaintiff, which accrued on account of the sale of plaintiff's goods by McMaster, furnished under the terms of the contract, irrespecitve of the form to which they (plaintiff and McMaster) may have reduced such

indebtedness; and that nothing short of actual payment or a change in the terms of the contract would discharge the sureties. There is no evidence that the farmers' notes were taken in payment of McMaster's indebtedness, but his evidence and that of the plaintiff is to the effect that these notes were taken as additional security. For the reason they were so taken, defendants contend that the contract was thereby changed and the sureties released. It is well-settled law that a surety has a right to stand upon the letter and very terms of his contract, and any alteration in the terms thereof, though made for his benefit, will release him. [Burnes Est. v. Fidelity & Deposit Co., 96 Mo. App. l. c. 470, 70 S. W. 518, and cases cited; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620.] But the taking of subsequent collateral security for the payment of the debt, when no extension of the time of payment is granted in consideration of such collateral security, does not alter or vary the letter or terms of the surety's contract, is for his benefit and does not operate to discharge him. [Headlee, Admr., v. Jones, 43 Mo. 235; Lafayette County v. Hixon, 69 Mo. 581; Noll v. Oberhellman, 20 Mo. App. 336; Newcomb v. Blaekly, 1 Mo. App. 289.] The indorsement and delivery of the farmers' notes by McMaster to plaintiff was but the giving of subsequent collateral security for the payment of his debts to the plaintiff, was for the benefit of the sureties and, therefore, did not have the effect to release them.

We think the suit was properly brought, that the petition states a good cause of action, and the principal of the farmers' notes filed as exhibits, if uncollectible, are prima facie evidence of the sum that plaintiff ought to recover, plus six per cent interest thereon, from the date of the demand of payment.

The judgment is reversed and the cause remanded. *Nortoni, J.,* concurs; *Goode, J.,* not sitting.