## P. & M. J. BANNON *v.* W. H. JACKSON *et al.*

### (*Nashville.*   December Term, 1908.)

1. **CONTRACTS.** Building contract stipulating against extra work except upon written orders of architect.

   A stipulation in a building contract that no work shall be considered extra, unless a written order for the same shall have been given to the contractor by the architect, prevents a recovery for extra work, where the architect did not first give the contractor a written order therefor, and the owner or his authorized agent did not waive the written orders. This rule is justified by sound reasoning and is abundantly supported by authority. (*Post*, *pp.* 384-395.)

   Cases cited and approved: Langley v. Rouss, 185 N. Y., 201; White v. Railroad, 50 Cal., 417; O'Keefe v. Corporation, etc., 59 Conn., 557; Beers v. Wolf, 116 Mo., 179; Condon v. Jersey City, 43 N. J. Law, 452; Cooper v. Hawley, 60 N. J. Law, 560; Sheyer v. Pinkerton Construction Co. (N. J., 1904), 59 Atl., 462; Stuart v. Cambridge, 125 Mass., 102.

2. **SAME.** Same. Written orders of architect are not dispensed with by a provision making him supervisor of the building.

   A stipulation in a building contract that no work shall be considered extra, unless a written order for the same shall have been given to the contractor by the architect, is not so modified by a provision making the architect the supervisor of the building, with authority to order and direct in its construction, that the owner is bound by an oral order of the architect for extra work. The architect was, by such provision, constituted the agent of the owner in superintending the work within the terms of the contract, which required his orders for extra work to be given in writing signed by him. (*Post*, *pp.* 385, 393-395.)

   Case cited and approved: Langley v. Rouss, 185 N. Y., 201.

**3. SAME.** Certificate of architect as a condition precedent to maintenance of suit by builder for compensation, when.

A stipulation in a building contract that in case of each payment a certificate shall be obtained from the architect, to the effect that the work has been done in strict accordance with the drawings and specifications, and that the payment is properly due, makes the certificate of the architect a condition precedent to the maintenance of a suit by the contractor against the owner for compensation, in the absence of a showing of a fraudulent, malicious, capricious, or unreasonable refusal to issue the certificate, or a waiver of the condition, or the inability of the contractor to obtain the certificate by some cause over which he has no control. (*Post, pp.* 384, 395, 396.)

**4. CHANCERY PLEADING AND PRACTICE.** Rights to be determined by facts existing at commencement of suit, or by subsequent facts presented by supplemental pleadings.

The rights of the parties to a chancery suit are to be determined by the facts existing at the commencement of the suit, unless something affecting the matter in issue has since occurred, and is presented by a supplemental pleading. (*Post, pp.* 396, 397.)

Cases cited and approved: Payne v. Beech, 2 Tenn. Chy., 708; Riddle v. Motley, 1 Lea, 468.

**5. SAME.** Same. Case in judgment.

Where a building contract requires the presentation of the certificate of the architect as a condition precedent to the maintenance of a suit for compensation, and the contractor's bill in chancery makes no reference to the certificate and offers no excuse for failing to obtain it; and the answer offers, as a ground for resisting recovery, the failure to obtain the certificate, the contractor cannot rely on a certificate subsequently obtained, unless presented by a supplemental bill. (*Post, pp.* 396, 397.)

Bannon v. Jackson.

6. **CONTRACTS.** Owner may contract against liability for damage to material or work of one independent building contractor done or caused by another.

A stipulation in a building contract that the owner will not be responsible for any loss or damage which the contractor may sustain, in material or work, at the hands of any other contractor, relieves the owner from liability for damages sustained by the contractor through the negligence of other independent contractors of the owner. (*Post, pp.* 385, 397, 398.)

7. **SAME.** Partial payment does not create implied promise to discharge the balance of an unfounded claim.

The mere payment of a part of a claim, where there is no liability, does not create an implied promise to discharge the remainder of the claim. (*Post, p.* 398.)

8. **SAME.** Partial payment of unfounded claim is not a waiver of contract provision against such claim, when.

Where a building contract stipulated that the owner should not be responsible for any loss or damage which the contractor might sustain, in material or work, at the hand of any other contractor, a mere payment, by the owner, of a part of a claim of the contractor for damages caused by the negligence of another independent contractor was not a waiver of such contract provision. (*Post, pp.* 385, 398.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

E. A. PRICE and RYAN & CAIN, for complainants.

HILL MCALISTER, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The late W. H. Jackson and Howell E. Jackson, the owners of a life estate in a lot in Nashville, contracted with various parties for the erection on it of a large business house. The complainants, P. & M. J. Bannon, under the name and style of the Louisville Fireproof Construction Company, on the 22d of September, 1893, entered into articles of agreement with the owner to furnish and place in the building the fireproofing required.

By the first article of this agreement, the complainants undertook that they would "well and satisfactorily erect, finish, and deliver in a true and workmanlike manner the fireproofing materials required in the erection and completion of the new stores, offices, and apartments, . . . agreeably to the plans, detailed drawings, and specifications, prepared for the said work, . . . to the satisfaction and under the direction and personal supervision of the architects. . . ."

The second article stipulated for the payment of the sum of $13,850 for this work by the owners, but with the proviso "that in each case of said payment a certificate shall be obtained from and signed by H. J. Dudley & Son, architects, to the effect the work is done in strict accordance with the drawings and specifications and that they consider the payment properly due."

The third article provided that the owners at any time during the progress of the work might require

alterations, deviations, additions to, or omissions from "the said contract, . . . and the same shall in no way injuriously affect or make void the contract; but the difference for the work omitted shall be deducted from the amount of the contract by fair and reasonable valuation, and for additional work required in alterations, as provided and hereafter set forth in article 6."

Article 6 is in these words:

"No new work of any description done on the premises, or any work of any kind whatsoever, shall be considered extra, unless a written order for the same shall have been given to the contractors by the architects, and their signatures obtained thereto."

The seventh article in substance and effect provided that the owner should not in any manner be held responsible for any loss or damage which the complainants might sustain in material or in work at the hand of any other contractor upon this building.

The work covered by this contract was begun by the complainants soon after the date, and was finished by them in June or July, 1895, and immediately thereafter they presented an account of the amount that they claimed to be due them to W. H. Jackson, who, by the death of H. E. Jackson, which occurred during the progress of the work, was the surviving owner. This account was not accompanied with a certificate from the architects, as required by the second article of the contract. It embraced items of extra

work aggregating $5,819. Payment being refused, the present bill was filed, seeking a recovery for those amounts, as well as for $808, which they claimed to be due them for damages they had sustained in their work and materials at the hands of other contractors on this building, which it was insisted by them the owners were obligated to pay.

In their bill the complainants admit that the extra work embraced in their account was done without written orders from the architects of the owners; but they allege that they did it by their direction, and that they, and their representative, who was looking after the filling of their contract on this building, were assured by H. J. Dudley, the senior of this firm of architects, that written orders in strict compliance with the requirement of article 6 of the contract had been or would be prepared by him and delivered to the complainants, but that the demands for these written orders were constantly evaded by him and his firm. While it is alleged in the bill that during the progress of the work H. J. Dudley uniformly recognized the obligation of the owners to pay for this work as outside the contract, and by his promise to give them orders in writing covering this extra work lulled complainants into security, yet after the completion of all the work the architects and the defendants denied the liability of the latter for the same.

To this bill an answer was filed by W. H. Jackson, as well as the other defendants, in which it was denied

that the several items claimed as extra work by the complainants were in fact such; but, on the contrary, it was averred that each one of these items was included in the original contract with complainants. It was further denied that the architect, H. J. Dudley, made any oral promise to pay any one of said items, and in addition it was averred that, even if it were true he had made such oral promise, the defendants were not bound thereby, by reason of the provision of the sixth article of the contract, set out above. The owner also denied the liability of the defendants for the damage that complainants alleged they had sustained at the hands of others, or that there was any sum whatever due complainants on the original contract, because, as averred by the defendant, W. H. Jackson had been compelled to pay other parties sums of money which were properly the debts of complainants, and the sums so paid were relied upon by way of set-off and counterclaim against any demand which complainants may have had against them. It was further averred that complainants were not entitled to a recovery for any balance upon the original contract for the additional reason that the second article thereof made it a condition precedent to the right of complainants to demand payment of defendants for work done that the written certificate of the architect, certifying the money so demanded, was to be obtained, and that complainants had not produced such a certificate.

Much evidence was introduced in the cause, and finally the record assumed very large proportions. It is unnecessary, in the view we take of this case, to analyze the testimony. It is sufficient to say that certain matters were developed in the preparation of the cause for trial which throw serious discredit upon the claim of complainants, if in fact they do not impeach its integrity. Only two or three of these will be mentioned. As has already been stated, the work of complainants was finished in June or July, 1895. They were at once notified that their claim would not be recognized by the owners. The present bill was filed on the 17th of January, 1896. The depositions of the complainants to establish their claim were taken from time to time, so that all were finished by the 1st of September, 1897. This was the last step taken in the cause by them until the 18th day of March, 1905, when they took certain depositions in Louisville, Ky., with regard to the character and handwriting of M. J. Bannon.

As a reason for this long lull in the ligation, involving as it did the large amount of money claimed by these complainants to be due them, it is suggested by defendants that it is to be found in the fact that upon the cross-examination of M. J. Bannon in 1897 there was produced and submitted to him by their counsel a paper writing, which is in words and figures as follows:

"NASHVILLE, TENNESSEE, September 9, 1896.

"For services rendered we hereby acknowledge indebtedness to H. J. Dudley in the sum of $500, to be paid upon the settlement of the suit now pending, between ourselves and General Jackson and others, for fireproof construction in building corner Church and Sumner streets, Nashville, Tennessee.

"[Signed]        Louisville Fireproof Construction
                                                Company,
                 "M. J. BANNON, General Manager."

When interrogated with regard to it, the witness denied that the instrument had been written by him. Some eight years thereafter the testimony of experts was taken as to the genuineness of this writing. One of these experts, comparing it with writings admitted to be those of M. J. Bannon, testified that it was written and signed by him. Another expert, having like advantage, after a painstaking examination, testified that the writing and signature were not those of the complainant M. J. Bannon. A number of persons who have been familiar with the handwriting of this party for many years were examined as witnesses, and with one accord they testified that they were satisfied that this instrument and the signature thereto were not written by M. J. Bannon.

It is unnecessary for us to determine whether this paper is genuine or not; but it is urged by the defendants, as strongly corroborating their insistence that it is genuine, and strongly points to the fact of corrupt

dealing between complainants and H. J. Dudley, one of the architects of the defendants, that the latter, in his firm name, on the 16th day of July, 1896, gave to the complainants a certificate, in which it was stated that they were entitled to $8,537.34 "for fireproof tiling, including all extra work and connections by them in the building" in question, directing the same to W. H. Jackson for payment. With this certificate there is filed in the record a letter from H. J. Dudley to M. J. Bannon, in which he states he never had refused to give an order for extra work on that building, nor had he ever doubted the liability of the owners for this extra work, and yet, in the original bill in the cause, it was distinctly alleged that both the architects and the defendants denied their liability for such extra and additional work and material. There is no question but that this allegation was true as to the defendants, and as little that it was equally true as to the architects. For a witness for the complainants, who, as an expert, made an examination for them of their work on this building in the spring of 1896, testifies that at the time of this examination he understood that the architects had declined to allow complainants anything for the work which they claimed as extra their contract, and as this party was making this examination at the instance of, and, as we are satisfied, under the eye of, M. J. Bannon, we think it not only reasonably, but necessarily, to be inferred that he derived that information from him.

Conceding, however, that the claim for extra work is honest, and that it was done upon the verbal orders of the architect, given from time to time; can a recovery for it be had, in view of article 6 of the contract, hereinbefore set out? That article was evidently introduced with the purpose of avoiding just such a controversy as we have presented in this record. It is apparent that, if the complainants had taken the precaution to obtain orders signed by the architect before undertaking this work, then there could have been no question as to the liability of the owners for it. But they saw' proper to disregard it, and the result is that they were met with the defense that the work, if done, was within the terms of the contract, or, if this be not so, then it was done in the teeth of the contract and in utter disregard of the rights of the owners of the building. As is said in *Langley* v. *Rouss*, 185 N. Y., 201, 77 N. E., 1168, 7 Am. and Eng. Ann. Cas., 210: "Where contracts, including plans and specifications, involve a great amount of detail, and the merits of claims or alterations and extra work are difficult to determine and adjust after the work is completed, a provision requiring the contractor to submit itemized estimates of the expense of proposed alterations or extra work, and that the order of the architect therefor shall be in writing, is reasonable, and tends to a more definite understanding, and avoids controversies. The contractor is not required to make changes, or perform extra work, unless he first receives written authority

therefor, and the contract is, therefore, neither unreasonable nor severe, and it should be enforced."

Many authorities may be found where it is held that, notwithstanding such a limitation in a contract, yet the contractor has been permitted to recover for extra work done by agreement with the owner or upon the order of the architect with his knowledge and consent. This, however, is upon the principle that the parties to the contract may, if they see proper, waive any provision made in the interest of either. Such cases, however, cannot be invoked where the record presents such facts as we have in this. In the absence of a waiver by the owner, as above indicated (and there is no pretense of either an actual or constructive waiver by the owner, or owners, of this contract provision), we understand it to be settled, by the overwhelming weight of authority, that a recovery cannot be had for extra work in the face of a requirement such as we find in the article in question.

In 30 Am. and Eng. Ency. of Law, 1285, the rule with regard to such a provision is thus stated: "Contracts conferring upon the architect, or the engineer, power to order extra work, frequently provide that the power shall be execised only in a certain manner, and in such case a compliance with the particular provision is necessary in order to bind the builder." In 6 Cyc., 16, it is said that "a provision that the builder is not to execute any extra work, or make any modifications or alterations in the work mentioned in the specifications

and plans, unless ordered in writing by the engineer in charge, or claim payment for same, unless such written order be produced, is valid and should be enforced."

In 2 Page on Contracts, sec. 785, it is said:

"If the contract requires a written order from the architect for extra work, no recovery can be had for extra work without such order, if the owner, or his authorized agent, have neither of them waived such a provision."

The rule thus announced is recognized, among others, in *Langley* v. *Rouss*, supra; *White* v. *San Rafael, etc., Railroad,* 50 Cal., 417; *O'Keefe* v. *Corporation, etc.,* 59 Conn., 557, 22 Atl. 325; *Beers* v. *Wolf,* 116 Mo., 179, 22 S. W., 620; *Cooper* v. *Hawley,* 60 N. J. Law, 560, 38 Atl., 964; *Stuart* v. *Cambridge,* 125 Mass., 102; *Condon* v. *Jersey City,* 43 N. J. Law, 452; *Sheyer et al.* v. *Pinkerton Construction Co.* (N. J., 1904), 59 Atl., 462.

It is insisted, however, inasmuch as by another article in the contract it was provided that the architects were made the supervisors of this building, with authority to order and direct in its construction, that the sixth article is so modified by this other provision as that the owners were bound by an oral order, given by these architects, for this extra work. This insistence, however, is obviously unsound. The architects, by the provision thus invoked, were the agents and representatives of the owners in superintending the work within

the terms of the contract. They had the authority to enforce a literal compliance upon the part of persons engaged in doing work with the contract which they entered into. It was their duty, as well as their right, standing in the shoes of the owners, to see that proper materials were used and skillful workmanship was employed in the construction of the building. In other words, the architects were expressly made the agents of the owners for the purposes of the contract; but such agency, "so far as it related to making alterations, or directing that extra work should be done, was limited, as in the contract stated, to such orders as should be given in writing." *Langley* v. *Rouss,* supra.

We are unable to discover any ambiguity in this sixth article. It contains a clear restriction upon the authority of the architects, made for the protection of the owner. If it be, as insisted by the counsel of complainants, that the writing required could be as well given after the work as prior thereto, within the terms of the article, then there would be no occasion for it, as the extra work might as well be included in the final certificate, signed by the architect, as provided for in another part of the contract.

Without an analysis of the various cases referred to by the respective counsel in this case, we are satisfied, from an examination, that the rule, which, in the absence of a waiver upon the part of the owner or his authorized agent, requires a strict compliance with, and enforcement of, the provision found in the sixth article

of this contract, is justified by sound reason and is abundantly supported by authority.

This leaves open for determination only the claim made for the balance alleged to be due on the original contract, and that for damages sustained in their materials and work at the hands of other contractors upon the building. As to the first of these, it is conceded that the defendants are entitled to large credits upon it; the amount of these, however, not being definitely shown in the record. Waiving this, however, we are satisfied that this claim must also be rejected. By one of the articles in the contract, between complainants and the owners of the building, as has been seen, it was provided "that in each case of payment a certificate shall be obtained from and signed by Henry J. Dudley & Son, architects, to the effect the work is done with strict accordance with the drawings and specifications, and that they consider the payment properly due. . . ."

The authorities hold, save in certain exceptional cases, that where a provision of this sort exists, the obtaining of a certificate is a condition precedent to the maintenance of a suit by the builder against the owner for compensation. 30 Am. and Eng. Ency. of Law, p. 1239.

As is said in 6 Cyc., p. 88: "Where the contract, either expressly or impliedly, makes a reference to arbitration, or a certificate, decision, or estimate of an architect, a condition precedent to the right of the

builder to sue on his contract; the builder must comply with the condition before suing for compensation, on the contract, his employer being under no liability to pay unless this is done, if there is not sufficient excuse for the builder's failure to refer or obtain such certificates, decisions, or estimates, such as a fraudulent, malicious, capricious, or unreasonable refusal to determine the facts or issue the certificate, or a waiver of the condition, or the builder is prevented from obtaining such certificate, decision, or estimate, by some cause over which the builder himself has no control whatever." The text of these two works is supported by many cases; in fact, by an unbroken line of authorities.

In the present bill no reference is made to this provision, and no excuse is offered for a failure to obtain a certificate from the architect as to the balance alleged to be due on the original contract. The answer, with other grounds for resisting recovery, distinctly avers the failure of complainants to obtain this certificate. To meet this, in the progress of the cause, and in the taking of the testimony, the complainants disclosed the paper signed by the architects, executed, not only long after the completion of the building, but some six months after the institution of this suit; and this is done by them without bringing the instrument forward, by supplemental bill or otherwise. Thus it is complainants sought in their bill a recovery for this balance upon the averments, independent of and with-

out regard to this provision of the contract, and then, practically abandoning this theory, at last in their argument placed their right to a decree upon this subsequently acquired paper. Granting, notwithstanding a record which contains much to throw grave suspicion on the manner of obtaining this instrument, it was honestly given, and as honestly received, yet we think the well-established rule of chancery practice precludes relief as to this item. This rule is thus stated in 21 Encyclopaedia of Pleading and Practice, p. 9: "The rights of parties are to be determined as they were at the commencement of the action, unless some event happens subsequent which affects the matters in issue; and the court cannot consider such subsequent matter unless it is presented by a supplemental pleading. One of the reasons for requiring a party to file a supplemental pleading, to enable him to rely upon matters that have occurred since the filing of his previous pleadings, is that he should enable his adversary to take issue as to such new matter." This rule is again announced on page 28 of the same work. On this last page the author cites many authorities in support of the text, and among them *Payne* v. *Beech,* 2 Tenn. Ch., 708, and *Riddle* v. *Motley,* 1 Lea, 468.

To like effect will be found Gibson's Suits in Chancery, secs. 431, 782, and 683, and 4 Elliott on Evidence, sec. 213.

This leaves open for consideration only that part of complainants' claim for compensation for damage al-

leged to have been sustained by them for the negligence, or otherwise, of other contractors engaged in and about this building. A conclusive answer to this is found in the seventh article of the contract, which is as follows:

"The owners will not in any manner be responsible, or accountable, for any loss or damage that shall or may happen to the said works, or part or parts thereof, respectively, or for any of the materials, or other things used and employed in the finishing and completing said works. . . . Where there are different contractors employed on the works, each shall be responsible to the other for damage to work and person, or for loss caused by neglect, by failure to finish work at proper times. . . ."

But it is said that, on an order of the architect, W. H. Jackson paid a part of this claim, and that in doing so he waived the benefit of this provision. As these damages were inflicted by independent contractors, and, so far as this record shows, without any concert of action on the part of either of the owners, it is difficult to see upon what ground the doctrine of waiver can be invoked. The owners were not liable in view of this provision, and a promise by them to compensate the complainants for such loss after its infliction, without more, would have been *nudum pactum* and unenforceable; and *a fortiori* a mere payment of a part of such claim cannot be regarded either as an implied promise to discharge the remainder or as a waiver of the protection of the contract provision.

The views expressed above relieve us of the necessity of considering a number of questions argued upon the briefs, and among them that made upon the admissibility of testimony tending to show that M. J. Bannon, one of the complainants, was the maker of the paper of September 9, 1896, which contained a promise to pay H. J. Dudley, one of the architects, $500, upon the settlement of the present suit.

It follows that the decree of the chancellor, in dismissing the bill of complainants, is affirmed.

The costs of the court below, and those incident to this appeal, will be paid by the complainants and their sureties.