VITAL CASSAN and another *vs.* J. C. MAXWELL and another, impleaded, etc.

## November 16, 1888.

**Mechanic's Lien — Action by Contractors on Subcontractor's Bond.** — C. & Co. contracted to erect a building for F., and they executed to him the bond provided by statute, protecting F. from mechanics' liens.   Subsequently C. & Co. sublet a portion of their contract to H., taking from him a like bond, with sureties, in the sum of $2,000, (the contract price,) conditioned that H. should pay all just claims for all work done and to be done by him, and for all materials furnished or to be furnished on his contract, and in the execution of it; in which bond H. and the sureties were bound unto C. & Co., "for the use of all persons who may do work or furnish materials pursuant" to H.'s contract.    H. failed to pay for materials, and C. & Co. were by law compelled so to do.    *Held,* that a cause of action at once accrued in favor of C. & Co. against H. and his sureties upon the bond.

Plaintiffs, on September 29, 1885, contracted in writing with one Farker to erect for him, on certain premises in St. Paul, a brick store building at the price of $9,441.    At the same time they executed to him a bond with sureties, in the sum of $10,000, for the use of all persons who might do work or furnish material pursuant to their contract, and conditioned for the payment of all claims for such work or materials as they should become due.    This bond was duly approved, and was filed for record December 10, 1885, pursuant to Gen. St. 1878, *c.* 90, § 3.    On September 29th, the plaintiffs sublet the carpenter and certain other work and materials to the defendant Major Hall, at the price of $2,000, and on October 5th Hall, as principal, and the defendants J. C. Maxwell and Charles L. Horst, as sureties, executed to plaintiffs a bond in the sum of $2,000, payable to

them, for the use of all persons who should do work or furnish materials pursuant to Hall's contract with them, and conditioned that Hall should "pay all just claims for all work done and to be done and all materials furnished and to be furnished pursuant to said contract and in the execution of the work therein provided for as they shall become due." This bond was also duly approved, and was filed for record October 21, 1885. Afterwards the defendant Hall became indebted to Hurd & Johnson, for materials used in the building, and they sued plaintiffs on the bond given to Farber, and recovered judgment for $1,045.20. Plaintiffs paid this judgment, and brought this action in the district court for Ramsey county, against Hall and his sureties on his bond, to recover the amount so paid. At the trial, before *Simons,* J., and a jury, it was admitted that the contract price, $2,000, was to be and was paid by plaintiffs to defendant Maxwell, for the protection of the sureties. The defendants Maxwell and Horst (who had separately answered) then offered evidence to prove (as pleaded in their answer) that all of this sum, had been paid out by them, on Hall's order, on just claims for labor and material performed for and furnished to Hall pursuant to his contract with plaintiff, and in performance of the work to be done thereunder, and who were secured by the bond in suit, and for whose use that bond was given. On plaintiffs' objection the evidence was excluded, the defendants excepting. The defendants then rested their case, and the court directed a verdict for plaintiffs; a new trial was refused, and the defendants Maxwell and Horst appealed.

*C. E. & A. G. Otis* and *W. J. Rodgers,* for appellants.

*Olivier & Farwell* and *S. L. Pierce,* for respondents.

Collins, J. The bond executed by Hall, as principal, and Maxwell and Horst, as sureties, contains the unambiguous and unequivocal obligation of those who executed it, that if Hall should "pay all just claims for all work done and to be done, and all materials furnished and to be furnished pursuant to said contract, and in the execution of the work therein provided for, as they shall become due," then it should be void; otherwise of full force and virtue. It is admitted that he failed to pay for certain material used in the contract men-

tioned in the bond, and that his creditors compelled these plaintiffs (who were the original contractors, and in part sublet to Hall) to pay the debt, in order that they might escape liability on their bond given under the mechanic's lien law to the owner of the property. Hall's creditors could have sued these defendants upon his bond, had they chosen so to do; and it would have been no defence for them to say that, as sureties, they had received, and properly disbursed, the full contract price,—the sum named in the bond,—for such was not their obligation. It was wholly immaterial that the contract price ($2,000) had been paid into their hands, and properly accounted for. In receiving and paying this money, they acted as Hall's agents as the medium through whom the business was transacted. It was precisely as if Hall himself had collected the money, and either paid it out or appropriated it to his own use. The contract, as set out in the bond, was not that the obligors should properly answer for the $2,000 which Hall was to receive for his labor, but, to that extent, they should be responsible for his failure to pay for material and labor, entering into the contract he had undertaken. Until this was done, they were not relieved from the plain terms of their obligation.

But it is urged that plaintiffs have no right to recover upon the bond, because it was given solely for the use of such persons as might perform labor or furnish material to Hall. The plaintiffs had obligated themselves by the statutory bond to Färber, for whom they were erecting the building, to pay for all labor and materials used in its construction; and had thus indirectly become liable to the men who worked for the subcontractor or furnished materials to him. The persons to whom Hall became indebted were his creditors primarily, but to them the plaintiffs were secondarily liable by virtue of the statute, and their bond executed thereunder. Obliged to pay because of their secondary liability, they stood in the position of a surety or guarantor, and, whether strictly or technically so, are entitled to subrogation, the same as a surety or guarantor. *Marsh* v. *Pike*, 10 Paige, 595. A surety is a person who, being liable to pay a debt, is entitled, if it be enforced against him, to be indemnified by some other person, who ought himself to have made payment before the surety was obliged to do so; and it is not material in what form the relation of principal

and surety be established, or whether the creditor is or is not contracted with in two capacities, as is often the case where bonds are taken. The relation is fixed by the arrangement and equities between the debtors or obligors, and may be known or wholly unknown to the creditor. *Smith* v. *Shelden*, 35 Mich. 42. The plaintiffs having been compelled to pay the debt which defendants had obligated themselves to care for and liquidate, a cause of action accrued against the latter, because these plaintiffs stood in the position of sureties for the performance of the conditions found in defendants' bond, and which they failed to fulfil.

Order affirmed.