REISSAUS,    Respondent,    v.    WHITES    et    al.,
Appellants.

**St. Louis Court of Appeals, December 17, 1907.**

1. **PRINCIPAL AND SURETY: Surety: Definition.** A surety is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed the obligation before the surety was required to do so.

2. ———: **Joint and Several Obligation: Terms of Bond.** While one, who is in fact a surety may, by the express terms of his contract, obligate himself as a principal so as to waive all rights which he might otherwise have as surety; this is not done merely by several persons signing a bond by which they agree to become jointly and severally bound, without designating which are principles and which are sureties.

3. ———: ———: **Bond of Contractor.** Where the bond of a building contractor was executed by himself and his sureties as their joint and several obligation, without designating anyone as principal, reciting that it was on the condition that the contractor, whose name appeared as one of the signers, should well and truly perform the condition of a contract to do certain work for the obligee, this was sufficient to show that the signers, other than the contractor, were sureties, and entitled to the rights incident to that relation.

4. ———: **Bond of Contractor: Extent of Sureties Obligation.** A surety has a right to stand upon the strict terms of his contract and is bound only to the extent and in the manner and under the circumstances pointed out in the obligation.

5. ———: ———: **Change of Contract.** Where a contractor, who by his contract undertook to do certain excavations and furnish materials and labor for the erection of a certain building, agreed with the owner to certain changes in the requirements of his contract, such that the changes amounted to additional stipulations engrafted upon the principal contract and changed its terms from those assumed by the sureties, upon the bond of the contractor, this was a release of the sureties from liability upon the bond for the failure of the contractor to per- ∴ ·m his contract.

6. ———: ———: ———: **Permissive Departure and Departure by Agreement.** Where a contractor, who has given bond for

the performance of this agreement, deviates from his contract by mere permission of the owner, whether the sureties are bound would turn upon the question of the materiality of such deviations; but where the deviations from the contract are made in conformity with an agreement between the owner and the contractor, and the identity of the contract is destroyed by the addition or introduction of new terms or stipulations, the surety on the bond for the performance of the contract as originally made is discharged, and it is immaterial whether the surety's risk is increased or diminished.

7. ———: ———: ———: Increased Risk. Where changes were made in the specifications of a building contract, such as to increase the cost, and no additional compensation was allowed the contractor for such changes, the deviations released the sureties on the contractors bond given for the performance of the contract.

8. ———: ———: ———: Changes Authorized by the Bond. Where a building contract authorizes changes from the specifications, such changes may be made without discharging the sureties on the contractors bond; but where the only provision of a contract referring to future changes was the following: "Subjected to additions and reductions as may be hereinafter provided," which stipulation was in connection with the amount of money to be paid as the work progressed, this did not authorize changes in the requirements of the original contract and such changes would release the sureties on the contractor's bond.

Appeal from Phelps County Circuit Court.—*Hon. Robert Lamar*, Special Judge.

REVERSED AND REMANDED (*with directions*).

*Watson & Holmes* for appellants.

(1) In discussing this case we desire to start out by laying down the elementary principles of law. That where the special contract pleaded as the foundation of plaintiffs right of recovery is one of suretyship, wherein plaintiff declares that he performed each and every of the conditions upon his part, he must show an exact and strict compliance with all of said conditions or terms, without departure therefrom, otherwise his proof

fails and he cannot recover of the surety. State ex rel. v. Tittman, 134 Mo. 162; Beers v. Wolf, 116 Mo. 179; Obebick v. Mayor, 59 Mo. App. 289; Evans v. Graden, 125 Mo. 72; Lumber Co. v. Gates, 89 Mo. App. 206; Eldredge v. Fuhr, 59 Mo. App. 44; Wofsinger v. Hartnet, 84 Mo. 549; Bover v. Cabanne, 105 Mo. 118; Feurth v. Anderson, 87 Mo. 354; Smith v. Haley, 41 Mo. App. 611; Eyerman v. Cemetery Assn., 61 Mo. 489; Davis v. Brown, 67 Mo. 313; Lewis v. Slock, 27 Mo. App. 119; Halpin v. Maning, 33 Mo. App. 388; Warson v. McElroy, 33 Mo. App. 553. (2) "A surety has the right to stand on the strict terms of his contract and if there is a departure therefrom he will be discharged and the rule is as applicable to building contracts as to other contracts." 71 Mo. App. 87; Burnes Estate v. Fidelity & Deposit Co., 96 Mo. App. 467. (3) "Sureties on a building contractor's bond will be released by payments by the owner of the building to the contractor in excess of the percentage provided by the contract to be paid during the progress of its erection, where such is paid without the consent of the sureties." Calvert v. Dock Co., 2 Keen (Eng. Chan.) 644; 28 S. W. 439; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Bragg v. Shain, 49 Col. 131; Board of Comr's v. Branham (C. C.), 57 Fed. 179; Stearns Law of Suretyship, 112.

*J. B. Harrison* for respondents.

(1) We think it is the established law that persons can bind themselves as principals and will be so treated if the contract itself binds them. The case of Beers v. Wolf, 116 Mo. 179, holds that "one who in fact is a surety may waive his rights as such and contract as principal." In the case of Lumber Co. v. Gates, 89 Mo. App. 201, "a surety has the right to stand upon the letter of the contract, but when the contract contemplates its alternation, such alternation does not affect the surety's liability." "One who in reality is a surety

may contract as principal. He may waive the rights which the law throws around a surety, and the surety does waive such right when he in terms contracts and agrees to be bound as principal." Wood v. Motley, 83 Mo. App. 97; Picot v. Signiago, 22 Mo. 587; McMillan v. Parkell, 64 Mo. 288; Visitation Convent v. Kleinhoffer, 76 Mo. App. 661; Bank v. Wells, 98 Mo. App. 573. (2) All alterations made necessary by the default or negligence of the contractor will not release the bondsmen and any alterations made or suggested by the contractor and for his benefit does not release the bondsmen. Fruin v. Railroad, 89 Mo. 397; Leavel v. Porter, 52 Mo. App. 632; Board of Education v. National Surety Co., 183 Mo. 167; Evans v. Graden, 125 Mo. 72. And the general principle and doctrine of the law is discussed in McConnell v. Poor, 52 L. R. A. 312. Boettler v. Tendrick, 5 L. R. A. 271. (3) Subsequent contracts do not constitute changes or alterations in the contracts or plans. "A subsequent, independent contract of the parties to do other and different work for the owner will not discharge the sureties even though done on the same building."

NORTONI, J.—The suit is on a builder's bond. Plaintiff recovered in the circuit court against both the builder and his sureties. Defendants appeal. The plaintiff, Reissaus, entered into a contract with the defendant, W. Vas Whites, a contractor and builder, whereby Whites undertook to do certain excavating, furnish all the material, labor, etc., and erect for plaintiff a certain brick building, etc., in St. James, Missouri. For the same consideration, and at the same time, defendant Whites, the builder, executed and delivered to plaintiff a bond conditioned for the faithful performance of the building contract and defendants J. S. Williams, N. Whites and C. W. Pace became jointly and severally obligated with the contractor, W. Vas Whites, in this

bond. The builder failed to comply with several stipulations of the contract with respect to the payment for materials used by him in constructing the building. These accounts being lienable in their nature, plaintiff proceeded, under competent provisions of the contract to that effect, to pay the same and relieve his building from the liens. Plaintiff having expended several hundreds of dollars in excess of the amount due the contractor in discharging these accounts, prosecutes this suit against all of the obligors in the bond, assigning the breach above mentioned. The case was referred in the circuit court. The referee having heard the evidence, made a finding of fact and recommended judgment for the plaintiff against all of the defendants. The court overruled defendants' exceptions to the report of the referee and entered judgment in accordance with the finding of fact and recommendation therein given. The record discloses an appeal on the part of all the defendants. However this may be, there is no argument advanced here seeking to reverse the judgment of the circuit court insofar as defendant W. Vas Whites is concerned. All of the arguments advanced in this court are in favor of those defendants other than the contractor himself, upon the theory that they are sureties in his bond and as such, are released from its obligation because of certain changes made in the original contract by the principal parties thereto without their consent.

In support of the judgment, it is argued on behalf of the plaintiff, first: that the several defendants last mentioned are principals and not sureties in the bond, and are therefore not entitled to the ordinary rights and equities accruing to sureties. And second, that even though they are sureties in the bond, the several admitted changes in the contract were made with the consent of such sureties given by them at the time of the execution of the contract, as is manifested by the

express terms of the instrument, which, it is asserted, contemplated by competent provisions, that changes from its original terms might be made by the principal parties. If this latter proposition of fact be true, the sureties remain liable as a matter of course, notwithstanding such changes, for the reason it is so nominated in the bond. The circuit court gave its judgment upon the theory that the defendants, other than the contractor, were principals with him, and not sureties in the bond. The first inquiry is, are the defendants other than the contractors, sureties? In order to reach an accurate solution of this question, it is important to ascertain, first, with precision, just what a contract of suretyship is and how such a contract may be identified and determined from that of the principal. Now a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed the obligation before the surety was required to do so. Or, in other words, it is the established law that whenever, as between two or more debtors liable to the creditor, to pay the same debt or perform the same obligation, it is the debt or obligation of one of them, the others may be said to be and are sureties for him who, as between themselves, should have first paid the debt or performed the obligation. [Smith v. Shelden, 35 Mich. 42; Wendlandt v. Sohre, 37 Minn. 162; Cassan v. Maxwell, 39 Minn. 391; Brandt on Suretyship (3 Ed.), sec. 1; 27 Amer. & Eng. Ency. Law (2 Ed.), 431, 432; Stern's Law of Suretyship, secs. 1-6.]

It is argued on behalf of the plaintiff, however, that because the obligors are not expressly denominated or pointed out in the bond, the one as principal and the others as surety, they all became principals by executing the bond which, in express terms, declares itself to be a joint and several obligation. Now while it is very

true that one who is in fact a surety may, by the express terms of a contract, obligate himself as a principal so as to exclude the idea of suretyship and thus waive the rights and equities which accrue to him as incident to the contract of suretyship (Picot v. Signiago, 22 Mo. 587; McMillan v. Parkell, 64 Mo. 286; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Wood v. Motley, 83 Mo. App. 97; Brandt on Suretyship [3 Ed.], sec. 51) it is not true, in the absence of some express words signifying as much, that several persons by merely becoming jointly and severally bound to pay a debt or discharge an obligation which, as between themselves, is the debt or obligation of one of their number, thereby become as principals in such a sense as to forego the rights and equities incident to suretyship. The fact that those of the obligors other than the principal debtor are not mentioned or identified in or upon the writing as sureties is entirely without influence. This is true for the reason if it appears that there is a principal contract which, in the first instance, is the obligation of one of their number (Brandt on Suretyship [3 Ed.], sec.19) and that this principal obligation is assumed in the full measure of its scope by the joint and several obligors under such circumstances as will permit them, in event they are required to pay the debt or any part thereof, to recover so much as they have discharged from the obligor whose duty it was to first discharge the entire obligation, then the contract is one of suretyship, notwithstanding the precise form of the words employed. The form of words is wholly immaterial unless the obligors expressly signify a purpose to waive their rights as sureties and become bound as principals, and if this intention is not signified, the ordinary rights and equities incident to suretyship arise, not from the particular words, but from the position the parties have assumed toward each other with respect to the debt or obligation assumed. [Brandt

on Suretyship (3 Ed.), sec. 1; Smith v. Shelden, 35 Mich. 42; Clark v. Turk, 50 S. W. (Tex. Civ. App.) 1070; 27 Amer. & Eng. Ency. Law (2 Ed.), 432.]

The bond in suit is, by express provision, a joint and several obligation whereby all of the defendants, without denominating any one as principal, or any one as surety, firmly bound themselves, their executors, etc., to pay the plaintiff, Charles Reissaus, etc., conditioned as follows: "The condition of this obligation is such that if the above bounden, W. Vas Whites, his executors, . . . shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions and agreements in the above mentioned contract, entered into by and between the said Charles Reissaus and the said W. Vas Whites," etc., etc., and shall fully perform the contract, etc., then the obligation to be void; otherwise to remain in full force. There appears in this a joint and several undertaking on the part of the obligors other than the contractor himself, to respond for the default of the contractor and indemnify the obligee, Reissaus, to the extent of loss entailed upon him by reason of the default of Whites, the contractor. It thus appears that Whites, the contractor, is the principal obligor and therefore it was his duty to first discharge whatsoever obligation had accrued to Reissaus on the bond because of his, the contractor's, default and thus save harmless his co-obligors, the other defendants. Not having done so, it was the privilege of Reissaus to proceed against all of the defendants and if he shall recover, it is certainly beyond cavil or controversy that the several defendants other than the contractor, have a right to demand and enforce indemnity and not contribution, from the contractor, Whites. This being true, there is present every element of suretyship in the undertaking before us and the defendants, J. S. Williams, N. Whites and C. W. Pace are adjudged to be sureties and as such,

entitled to the rights ordinarily incident to such relation.

2.    It is insisted the sureties are released from the obligation of the bond because the parties made numerous changes in the principal contract without their consent.    The argument predicates upon the familiar proposition that a surety being a favorite in the law, has a right to stand upon the strict terms of his contract and that any change therefrom by the principal parties, without his consent, will operate his release for the reason such changes destroy the identity of his contract and substitutes another and distinct undertaking for that assumed by him in the first instance.    In accord with this doctrine, it has frequently been determined there is no implied obligation on the part of the surety that he has undertaken more or other than that expressed in his contract, for it is only to the extent and in the manner and under the circumstances pointed out in the obligation, he is bound, and no further. [Stewart v. Miller, 9 Wheat. 681; s. c., 4 Wash. C. C. 26; Nofsinger v. Hartnett, 84 Mo. 549; Oberbeck v. Mayer, 59 Mo. App. 289; Bauer v. Cabanne, 105 Mo. 110; Brandt on Suretyship (3 Ed.), sec. 106; 27 Amer. & Eng. Ency. Law (2 Ed.), 489-496; Martin v. Whites, *ante*, p. 117, 106 S. W. 608.]

Invoking the principle referred to, the sureties point out numerous changes by the principal parties from the stipulations of their contract as manifested by the plans and specifications which were made parcel thereof, and that these changes were made without their consent.    In respect of this matter of defense, the referee found the facts as follows:

(a)    That under the west storeroom, a stone wall was substituted by the contractor at the request of the owner and architect instead of a wood girder mentioned in the specifications, and this change was without the

consent of the sureties.    It appears the contract re-
quired the builder to remove the dirt excavated and
not permit it to remain under the building.    The con-
tractor failed to carry out this provision.    The owner
and architect determined that to permit the dirt to re-
main under the building would cause decomposition
of a wood girder called for in the specifications and in-
sisted upon the contractor removing the same.    They
proposed as an alternative, however, that he might per-
mit the dirt to remain if he chose and erect a stone wall
as a support for the floor joists in lieu of the wood
girder, the wall to be paid for at the price provided in
the contract for other rubble masonry.    Nothing ap-
pears tending to show the value of the wall or the
amount paid therefor.    Suffice to say it was paid for
at the same rate provided in the contract for certain
other rubble masonry which was authorized and called
for in the specifications, and from this fact it may be
gathered that no loss was entailed upon the contractor
thereby.    However that may be, enough appears to
show a new and additional stipulation was engrafted
upon the principal contract by the principal parties
without the consent of the sureties.    This new stipu-
lation operated to change the terms of the contract
between the parties from those assumed in the bond.

(b)    The referee found that certain concrete work
was laid along the foundation walls and that this work
was not contemplated or specified in the contract.    The
contractor failed to remove certain refuse dirt as re-
quired and as it was feared the dirt would injure the
brick walls because of its communicating dampness
thereto, the owner and architect insisted upon its re-
moval.    As an alternative, however, they agreed upon
and permitted the contractor to build a line of concrete
around the walls, which they accepted in lieu of re-
moving the dirt.    The sureties were not consulted and
did not consent thereto.    The concrete work mentioned

was paid for by the owner presumably at a fair price. However this may be, the fact remains that the principal parties, in proposing and accepting the alternative mentioned, engrafted an additional stipulation upon the principal contract without the consent of the sureties, which operated to change its terms from those assumed in the bond.

(c)    The referee also found that by the agreement of the architect, who was plaintiff's agent, and the contractor, and without the consent of the sureties, a skylight differing from the one described in the specifications was selected and installed.    No extra expense was entailed on this account.    The    cost of the skylight installed was about the same as would have been that specified.    This change was at the instance of the contractor.    It was a concession made to him without the consent of the sureties.    It nevertheless engrafted a stipulation upon the contract between the original parties which operated to change its terms from those assumed by the sureties at the time of executing the bond.

(d)    The referee further found that the contractor, at the request of the owner, put in a door not specified under a stairway, and the extra cost entailed upon him thereby was $5.00.    That on the order of the owner, a door was substituted in one place where a window was called for in the specifications and this change entailed an extra cost of $5.75 from the contract.    That at the instance of the owner, the contractor put in wainscoting in the kitchen which was not specified in the contract, and this change entailed an extra cost of $8 upon the contractor.    None of these changes were consented to by the sureties.    There is nothing in the record tending to show the contractor received extra pay for any of these items.    The record discloses that he received only the amount due him under the provis-

ions of the contract as it was written.   However this may be, each of the changes above referred to engrafted a new stipulation upon the principal contract without the consent of the sureties, which operated to change its terms from those assumed by the several sureties when they executed the bond.

It is suggested that if some of these changes made by the owner and contractor entailed no additional expense and the extra expense of others was fully paid to the contractor by the owner, then the liability of the sureties was in no sense enlarged thereby and such changes should be treated as immaterial deviations, etc. Now it is proper to say here that the doctrine with respect to immaterial deviations from the contract in respect of acts of omission and commission in matters of performance is not pertinent to the case in judgment at it was to that of Martin v. Whites, *ante*, p. 117, 106 S. W. 608, for the reason here the matters complained of are not alone mere deviations in performance from provisions, such as those designed to regulate the mode and manner of payment, etc., nor are they alone deviations in the matter of performance from the plans and specifications after which the building should be fashioned, but on the contrary, the complaint is that new and additional terms and stipulations have been added by agreement of the principal parties to the principal contract without the consent of the sureties, which new stipulations so completely change the principal contract by deducting from and adding to its terms as to entirely destroy its identity.   There is a noticeable distinction in the cases dealing with the two propositions suggested, although it is not often pointed out, and the law is somewhat confused by reason of the distinction being overlooked at times.   The one class of cases, those dealing with mere permissive deviations in acts and omissions of performance without any agreement,

express or implied, between the owner and the contractor thereabout, turn upon the question of the materiality of such deviations and the inquiry directs itself to ascertain whether or not the deviation was substantial or insubstantial, when considered with reference to the intention of the parties, as manifested in the contract when viewed from the standpoint of the surety's risk. For example, see Smith v. Molleson, 148 N. Y. 241 and other authorities cited in Martin v. Whites, *ante*, p. 117, 106 S. W. 608.

The other class, of which the case at bar is one, where the original contract has been departed from; not merely a permissive departure, however, but a departure made in conformity to one or more subsequent express or implied agreements; turn upon the question of whether or not the identity of the surety's contract has been destroyed by the principal parties adding to or deducting one or more new terms or stipulations therefrom without his consent, and if so, the surety is discharged. In such cases it is wholly immaterial whether the surety's risk is increased or diminished. The mere destruction of the identity of the contract without the surety's consent is sufficient to operate his release. The reasoning of the law is, the surety is not bound by the old contract, for that has been abrogated by the new; neither is he bound by the new contract, because he is no party to it; nor can it be split into parts so as to be his contract to a certain extent and not for the residue; and therefore the surety is either bound *in toto* or not at all. [Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Warden v. Ryan, 37 Mo. App. 466; Evans v. Graden, 125 Mo. 172, 28 S. W. 439; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; Bethune v. Dozier, 10 Ga. 235; Prairie State Natl. Bank v. U. S., 164 U. S. 227, 17 S. C. Rep. 142; Burnes Est. v. Fidelity, etc., Co., 96 Mo. App. 467; Leavel v.

Porter, 52 Mo. App. 632; Brandt on Suretyship (3 Ed.), sec. 427.]

Whatever may appear with respect to the cost of several of the changes above mentioned, the referee's report shows clearly the following items entailed extra cost upon the contractor by reason of the changes mentioned: on account of the door under the stairway, $5; on account of a door being substituted for a window, $5.75; and on account of wainscoting in the kitchen, $8. All of these were changes from the specifications which were parcel of the original contract.    It appearing the contractor received from the owner only the amounts due under the contract, therefore no additional compensation was allowed him on account of these changes. In such circumstances they were certainly not immaterial deviations for they actually increased the burden of the contractor to the amount of $18.75, as found by the referee, and thereby enlarged the obligation on which it is now sought to charge the surety.    These changes of themselves are sufficient to operate the sureties' discharge.    [Beers v. Wolf, supra.]

3.    It is argued on the part of plaintiffs that the contract contemplated changes should be made from its original terms as the building progressed, and for that reason the sureties are not entitled to be discharged.    It is very true that when the building contract authorizes variations and changes from the specifications to be made, such changes may be made in conformity thereto without discharging the sureties.    This proposition rests upon the fact that the sureties have consented in the first instance to the changes in the prescribed manner.    [Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; Eldridge v. Fuhr, 59 Mo. App. 44; Burnes Est. v. Fidelity, etc., Co., 96 Mo. App. 467, 70 S. W. 518; Beers v. Wolf, 116 Mo. 179.]    In this connection, after providing the money shall be paid out only on certificates of the architect as the work progressed and

on a basis of seventy per cent of its value, the only provision of the contract referring to future changes, is as follows: "subjected to additions and reductions as may be hereinafter provided." Now it is argued from this the parties contemplated additions and reductions should be made to the terms of the contract. The language quoted certainly goes no further than to authorize the per cent mentioned, to be ascertained with reference to the estimated value of the labor and materials in place under the original contract and such "additions and reductions" as might be "hereinafter provided." There is no provision thereafter in the contract nor thereinbefore for that matter, providing for changes from the original stipulations and the words above quoted which are invoked in aid of this argument, cannot be reasonably construed to confer the consent of the sureties and authorize the principal parties to change the original contract.

For the reasons given, the judgment will be reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff against the principal defendant, in accordance with the finding of the referee, and discharge the defendant sureties. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.