## SCHOOL DISTRICT OF VILLAGE OF BARFIELD, Appellant, v. GREEN et al., Respondents.

St. Louis Court of Appeals, December 15, 1908.

1. **BONDS: Sureties: Building Contract.** Where a building contract did not provide for any changes in the work, but alterations were made in the progress of the work, changing the construction of the building from the plans and specifications which were made a part of the contract, the sureties on the builder's bond were not liable for the failure of the builder to complete the contract.

2. ———: ———: ———: **Estoppel.** Where the sureties on a bond given by a builder for the performance of a contract to erect a building were released from liability on account of changes from the specifications in the construction of the building, they were not estopped to assert their non-liability on account of having appropriated and converted to their own use some of the building material provided by the builder.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*Charles Otto Borth* and *John Morgan Atkinson* for appellant.

(1) The testimony fully shows that the only changes that the "building committee committee" permitted said contractor to make, were mere deviations in the matter of performance from the plans and specifications, after which the building should be fashioned, and that no new or additional terms and stipulations were added; the contract as far as completed was a "substantial" compliance with the contract as made. Martin v. Whites, 106 S. W. 610; Leavel v. Porter, 52 Mo. App. 641; Scriba v. Neely, 109 S. W. 844. (2) We further say that the question as to whether the changes were material or immaterial variations was one of fact for the jury to have determined under proper instructions, and not for the court on demurrer. Johnson v. Peyster, 50 N. Y. 666; Rose v. O'Riley, 111 Mass. 57; Phillips v. Gallaut, 62 N. Y. 264; Woodard v. Fuller, 80 N. Y. 316; Elliott v. Caldwell. 43 Minn. 360. (3) We further say that by reason of respondents taking the security or indemnity from said Boyle and his wife, that they are now estopped from denying their liability as such sureties, or making any defense that they are released. The law is clearly stated on this subject, 29 Amer. and Eng. Ency. (2 Ed.), p. 507, to be: "A surety who holds indemnity or security from the principle is not discharged by an indulgence or extension which otherwise would have that effect." Bank v. Davis, 87 Mo. App. 248; Hardester v. Tate, 85 Mo. App. 627; State ex rel. v. Bergfeld, 108 Mo. App. 637.

*Thos. F. Lane* and *Chas. B. Butler* for respondents.

The judgment of the trial court should be upheld for the reason that respondents are discharged from all liability whatever, had a legal contract been made, by reasons of the facts that material changes were made in the contract by appellant and defendant Boyle in the material used and change of plans of construction without consent of respondents. J. W. Boyle testified that structural changes were made and different material used from that specified in plans and specifications. "Any change in a contract made after a surety signs it or signs a bond for a faithful compliance with the contract will release the surety if the change be made without his consent." Leavel v. Porter, 52 Mo. App. 640; Warden v. Ryan, 37 Mo. App. 467; 7 Current Law, 492; Taylor v. Jeter, 23 Mo. 250; Ryan v. Morton, 65 Tex. 262; 6 Cyc., 76, 78.

GOODE, J.—On August 31, 1905, the appellant school district entered into a contract with J. W. Boyle for the erection of a schoolhouse; or attempted to make such a contract, the effectiveness of the attempt being disputed on the contention that the full contract and its consideration were not in writing as required by the statutes. [3 Mo. Ann. Stat., sec. 6759.] We will not decide this question, because we think the appeal must fail on another ground. Conceding there was a lawful contract, it provided Boyle should complete the schoolhouse by January 1, 1906; that it should be built in accordance with plans and specifications which had been submitted to the school board by J. G. Vincent, an architect, and approved by the board, and that said plans and specifications should constitute a part of the contract; that Boyle should be paid forty-one hundred dollars, and a warrant for said sum should be drawn as soon as he had given bond in the sum of forty-three hundred dollars for the performance of the work. Boyle

subsequently executed a bond for forty-one hundred dollars instead of forty-three hundred dollars, with these respondents and one other person as his sureties. He also executed a contract. Both instruments bear the date of August 31, 1905, and were approved by the board of school directors on September third of said year. He began work on the house but failed to complete it in the time stipulated and, in truth, the work was in progress in March, 1906, when Boyle abandoned his contract and left the State. . Thereupon the sureties on his bond, or some of them, took charge of such building material as was still on the lot and had not been used, and sold it after posting notices that the material had been purchased by the bondsmen. According to the estimates of the witnesses, the material thus appropriated was of the value of $1,200. In May, 1906, while Boyle was absent from the State, his wife turned over to respondents Green and Armstrong, a house and lot and personal property of the total value of nine hundred dollars. This property, or most of it, belonged to Mrs. Boyle. She swore it was all hers practically, and that she delivered it to those men to indemnify them against loss on the bond and on the understanding they would complete the schoolhouse. She was given a receipt signed by the two men named which described the property and estimated its value, and then said:

"All the above property and cash and note received from Mollie Boyle to apply on payment of the finishing of schoolhouse which J. W. Boyle failed to finish, and the above being all received of her except such book accounts and papers now held in Bank of Naylor, and we, the undersigned, agree to give the said Mollie Boyle and J. W. Boyle no further trouble from the time said papers and property shall have been fully turned over to us, leaving to their honor any further payments which they may see fit to make at any future time; we holding only such property and papers now in our hands and to be delivered, thus releasing all claim to

the property which Mollie Boyle now lives in from any claim to us.

"Signed and delivered the day first above written.

.          .C. B. ARMSTRONG,

GEO. S. GREEN."

During the course of the work the plans and specifications were deviated from in several particulars. The specifications called for full-length joists overhead in the second floor, and instead of using such joists, columns were put in the building, running to the roof, and short joists were extended from either side to the center where they were supported by these columns. Cement window sills were made instead of oak sills which the specifications called for. The evidence tends to show the windows and doors were placed differently from where the plans indicated they should be. The specifications said trenches for the foundation should be excavated twenty-four inches in depth and thirty inches in width, and be filled to the height of one foot above the ground with solid concrete, well tamped; said concrete to be made of good Portland cement and gravel, or crushed stone and sand properly mixed, and applied to assure first-class work. Instead of this being done, Portland cement was not used in the foundation. The contract called for good merchantable red brick, well burned and uniform in color. Part of the brick used were according to specifications and part were not; and brick of different colors were used, in consequence of which the walls were painted, a work not called for by the plans and specifications. The sureties were not shown to have assented to these changes. The testimony goes to show that when Boyle abandoned the job, the interior of the house was unfinished, and it would cost from twelve to fifteen hundred dollars to finish it. Meanwhile Boyle had been paid the full contract price of forty-one hundred dollars, and this action was instituted against three of the sureties on his bond to recover the loss the

district sustained by his failure to fulfil the agreement. Because respondents and Jacks, the other surety on Boyle's bond, took possession of the material on hand when he left and sold it, the petition pleads respondents are estopped to deny liability as sureties on the bond or in any way dispute the legality of it; and the like averment of estoppel is made against Green and Armstrong because they received the property aforesaid from Mrs. Boyle and gave the receipt we have recited. The averments of estoppel in the petition were struck out on motion of respondents and error is assigned for this ruling.    The answer admits the execution of the bond and denies the other allegations of the petition. It then pleads other defenses of which the following is relevant to the point to be decided: In violation of the contract and without respondents' consent, appellant ordered sundry changes and deviations from the plans and specifications for the schoolhouse, though the plans and specifications were part of the contract, and because of these changes respondents were discharged from liability.    A replication was filed, which denied the new matter averred in the answer, and the same facts which had been pleaded in the petition by way of estoppel and stricken from said pleading by the court, were set up in the replication as estoppels against several defenses pleaded in the answer, including that of alteration of the plans and details of the house.    At the conclusion of the evidence the court directed the jury to return a verdict for respondents, which having been done and judgment entered accordingly, and a motion for new trial filed and overruled, this appeal was taken.

1.    Various points urged by the parties may be put aside if, as respondents contend, they were released from liability as sureties on the bond by the deviations from the plans and specifications which occurred during the progress of the work.    These changes were testified to by Boyle himself, and that they were made is not

disputed; but their importance is disputed on the theory that they added nothing to the cost of the house. As to this the only testimony was Boyle's, who was a witness for appellant and swore he did not think the changes either diminished or increased the cost. It looks like he must have been disappointed in his estimate of the expense of the work and material used for the house; for he said he left because he ran out of money. We have stated what the alterations were, and it is apparent they changed considerably the construction of the building from the original plans and specifications prepared by the architect Vincent, which were made part of the contract. Running columns from the ground to the roof to support short joists, was an arrangement unlike the first design and which required four columns. The changes in the locations of doors and windows, and in the quality and color of the brick, painting the walls and omitting Portland cement from the foundation were material variations. Unlike many such bonds, the contract and bond before us contain no clause providing that alterations might be made in the course of the work without discharging the sureties; and the Supreme Court has decided the doctrine of law which allows a surety to stand on the strict terms of his contract and releases his liability, if it is altered without his consent, applies to building contracts. [Beers v. Wolf, 16 Mo. 179, 187.] In the same case, as also in Reissaus v. Whites, 128 Mo. App. 135, it was declared that if a building contract which is secured by a bond for faithful performance, is departed from in the course of construction, and the deviations are not merely tolerated by the obligee in the contractor's bond, but are made pursuant to an agreement with him and amount to altering the terms of the contract, the sureties on the bond will be discharged if the changes occur without their consent, even though the risk to them is not increased. This doctrine proceeds on the principle that the identity of the contract for the performance of

which the sureties became bound, is destroyed by subsequent agreements between the owner and the contractor for deviations from the original plans. This case cannot be distinguished from Beers v. Wolf, in any respect, as far as the point in hand is concerned, and is controlled by the authority of that decision. It is argued the changes were merely permitted by the directors of the school district, not authorized or assented to by them. The testimony is positive that they were made pursuant to agreements with the directors. Boyle testified as follows:

"By whose authority and whose consent were these changes made? A. By the building committee; the members.

"Q. Who suggested the changes? A. Well, I think some of the changes were suggested by some of the members of the board before the building was started in regard to the long joist. Some of them thought it would not make as good a house as it would be to put in columns."

2. It is insisted respondents are estopped to defend against liability on Boyle's bond because they appropriated the material he had on hand when he left, sold it and converted the proceeds to their own use, and some of them requested the school district not to be in a hurry about suing on the bond until the sureties had time to see "what could be done about getting things in shape to go on with the building." In this interview the board asked the bondsmen to promise to finish the schoolhouse, but this promise was not given; the bondsmen merely requesting that suit be postponed until Boyle was heard from, or, as said, until they had time to see if an arrangement could be made to go on with the building. As far as the controversy between the school district and the bondsmen is concerned, no element of estoppel appears. The district was not induced in any way to alter its position by what the bondsmen did in respect of the material left by Boyle

and which he owned. The appropriation of the property may have been tortious as against Boyle; but we do not see that it infringed any legal right of the district. If a suit on the bond was withheld at the request of the sureties, this delay was granted on no promise of the sureties to make good the default of Boyle, either by payment or completion of the house. At most the district consented to await their decision as to what they could or would do. These incidents do not estop respondents to set up a release of liability on the bond, if Boyle and the directors changed the contract and the bond securing it, by later agreements. The sureties seem to have taken possession of Boyle's property for the purpose of indemnifying themselves against a possible loss, and, on its face, their conduct in retaining the property and what they received from Mrs. Boyle, and doing nothing in consideration of the indemnity thus obtained, looks like a fraud on Boyle and his wife; but is not one against the district. The contract made between Mrs. Boyle and Green and Armstrong, works no estoppel in the present case; for the rights of the district against those sureties in this action on the bond, were neither enlarged nor lessened by their acquisition of Mrs. Boyle's property on an agreement to apply it in paying for the completion of the schoolhouse, even if such was the effect of their agreement. The only theory on which the said contract could accrue to the benefit of the district is, that it was intended for its benefit, and we by no means say this was true in such sense as would warrant the district to sue on it. Certainly it does not touch the present action, which does not declare on said contract, but on the bond. None of the acts of respondents suffice to raise an estoppel against their defenses, according to the principles of law regulating that doctrine. [Burke v. Adams, 80 Mo. 504; Noble v. Blount, 77 Mo. 235; Action v. Dooley, 74 Mo. 63.]

The judgment is affirmed. All concur.