LADISLAUS NEUWIRTH et al., Respondents, v. FRANK J. MOYDELL et al., Appellants.

St. Louis Court of Appeals, March 2, 1915.

1. **PRINCIPAL AND SURETY: Obligation of Surety.** There is no implied obligation that a surety in a bond has undertaken more or other than is expressed therein.

2. ————: **Building Contracts: Change in Contract: Discharge of Surety.** Changes made by the parties to a building contract,

without the consent of the surety on the contractor's bond, which vary or alter the terms of the contract, so as to destroy its identity in the matter of performance, work a discharge of the surety.

3. ———: ———: ———: ———. A subsequent independent agreement to do other and different work for the obligee than that covered by the original agreement does not discharge the surety on the obligor's bond; and hence where the parties to a building contract entered into a subsequent independent contract for the construction of a fire wall outside of the builing covered by the original contract, for a stipulated price to be paid to the contractor, the original contract was not altered, and hence the sureties on the contractor's bond were not thereby discharged.

4. ———: ———: ———: ———. A contractor for the erection of a building, who, without a request from or an agreement with the owner, installed ceilings of a different material than that required by the contract, breached the contract, so far as the owner is concerned, but such breach did not constitute an alteration of the contract so as to discharge the sureties on the contractor's bond.

5. ———: ———: ———: ———. A building contract and the bond given to secure its faithful performance are to be construed together, as constituting the entire undertaking, so far as concerns the sureties on such bond; so that where a building contract authorized the owner's superintendent to alter or deviate from "the plan and construction of the building," but the bond provided that "any alterations and additions to said contract . . . shall not exceed in extra costs the sum of $8," changes and deviations from the contract were authorized only where they did not cost more than $8, and changes and deviations involving the expenditure of a larger amount, made without the surety's consent, would effect the discharge of the surety.

6. ———: ———: ———: ———. In an action on a bond given to secure the faithful performance of a building contract, which provided that changes in the work were authorized only where they did not cost more than $8, evidence *held* to show that changes were made involving the expenditure of a larger amount than $8, without the surety's consent, and hence the surety was discharged as a matter of law.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

REVERSED.

*Geo. W. Lubke* and *Geo. W. Lubke. Jr.* for appellant.

(1)  The bond sued on, having been executed after the contract between the plaintiffs and Stefan Herich was executed and delivered, and the work contemplated thereunder begun, is without consideration and void.  Ring v. Kelly, 10 Mo. App. 411; Pfeiffer v. Kingsland, 25 Mo. 66; Lafayette Building Association v. Kleinhoffer, 40 Mo. App. 388.  (2)  The alterations and additions to the building in question made the building as constructed different from that contemplated by the contract between Herich and the plaintiffs and as called for in the specifications and plans, and having been made without the knowledge and consent of the defendants, sureties on Herich's bond, the defendants were thereby discharged from liability. Reissaus v. Whites, 128 Mo. App. 135; School District v. Green, 134 Mo. App. 421, 427; Utterson v. Elmore. 154 Mo. App. 646, 651.  Any substantial change in the contract between Herich and the plaintiffs made without the consent of the defendants operates to discharge the defendants as sureties, even though the change may be beneficial to Herich and the defendants.  Bauer v. Cabanne, 105 Mo. 110; Beers v. Wolf, 116 Mo. 179; Kane v. Thuener, 62 Mo. App. 69.  The provision in the contract that, in the event additions and changes in the building should be made while the building was in progress of construction, that the cost of such changes should be agreed upon in writing between the plaintiffs and Herich, and if not so agreed upon the building was to be completed according to the original plans and specifications was for the benefit of the defendants as well as the parties to the contract.  The changes in the building made prior to August 29, 1910, were made in utter disregard of this provision of the contract and the defendants were thereby discharged as sureties. Chapman v. Eneberg, 95 Mo. App. 127. The

provision of the bond sued on by which the defendants waived the right to be notified of changes and alterations in the building, provided the cost of the same did not exceed eight dollars, was effective only to the extent of the amount of changes thereby specified. If the cost of alterations and additions exceeded eight dollars the obligation was the same as if this provision were entirely absent from the bond. Bagwell v. American Surety Company, 102 Mo. App. 707. (3) The provisions of the contract between Herich and the plaintiffs regarding the manner and times at which the moneys to be paid to Herich thereunder were to be paid were a security to the defendants and any change in the time of payment without their knowledge and consent operated to discharge them as sureties. Harris v. Taylor, 150 Mo. App. 291; Taylor v. Jetter, 23 Mo. 244; Evans v. Graden, 125 Mo. 172. (4) The judgment is clearly excessive, because a recovery was had for the commission paid for the loan with which to pay off the claims against the building made by the plaintiffs and the cost of drawing and recording of the deed of trust securing the same and attorneys' fees. The first of these items is clearly not within the purview of the bond. The second of these items was not proved and the evidence on the last of these items shows that only seventy-five dollars has been expended by the plaintiffs for attorneys' fees in settling the lien claims. No recovery could be had in this suit for attorneys' fees for bringing it. In addition the $120.69 shown to have been paid to Cunningham Bros. on account of the plumbing on November 3, 1910, was not paid at the direction of Herich or with the consent and knowledge of the defendants. This payment is therefore purely a voluntary one and no recovery could be had for the same in this suit.

*Jno. L. Corley* for respondents.

(1) There was an agreement to give a bond at the time the contract was entered into and this was sufficient consideration for the bond given later. Whether the work contemplated thereunder was begun before the bond was given does not affect the consideration. Overbeck v. Mayer, 59 Mo. App. 289; Fullerton Lumber Co. v. Calhoun, 89 Mo. 216. (2) The defendants agreed in their bond to be unconditionally bound for the faithful performance of the contract and for all changes and alterations therein to the amount of the contract price, hence the changes that were made which did not involve any expenditure cannot be complained of by these defendants. There is no evidence that the substituting of metal studding and laths in one of the partitions resulted in any saving to Herich; there is no evidence that the substitution of corrugated iron ceilings for plaster ceilings entailed any expense on Herich; there is no evidence that the bricklayer did not repair the front sidewalk; there is no evidence that the things marked as "extras" on Cunningham's bill were extras at all or were furnished to or by the contractor; the changing of the partition on the second floor and the changing of the double doors to a little door cost eight dollars, and there is some evidence that this change was made while the building was being constructed. There were no other changes, and these changes had no effect on the sureties obligation, as they came within the contract price and the extra amount stipulated in the bond. Bagwell v. Surety Co., 102 Mo. 707. (3) A subsequent independent agreement of the principal to do other and different work for the same person would not discharge the surety; because in such case the contract of the surety would remain the same. The trial court found that the additional work complained of was done under a subsequent, independent agreement and the whole record

shows that the finding of the trial court was to the effect that it was other and different work from that contemplated by the contract sued on, hence the contract of the sureties remains the same. Beers v. Wolf, 116 Mo. 179-187; Leavel v. Porter, 52 Mo. App. 641; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629; Board of Education v. National Surety Co., 183 Mo. 166-179; Fullerton Lumber Mo. v. Gates, 89 Mo. App. 208; Rule v. Anderson et al., 160 Mo. App. 356; Hinton v. Stanton, 165 S. W. 299. (4) There is no substantial evidence that the first payments were not made in accordance with the terms of the contract. The court gave the instruction asked by the defendants upon the question of payment and there is substantial evidence that the payments were properly made. The court sat as a trier of the facts, and this court will not disturb the finding where there is subtantial evidence upon which said finding was based. (5) If there was a deviation in the matter of payment on the last $1000 the matter of the sureties liability or nonliability turns upon the question as to whether the deviation by the owner was material to the sureties risk. Martin et al v. Whites & Cox, 128 Mo. App. 117. The last thousand dollars was held for the purpose of meeting claims against the building. It was not only the right but the duty of the owner to use this money in this way. Harris v. Taylor, 150 Mo. App. 296.

NORTONI, J.—This is a suit against the sureties alone on a builder's bond, for damages accrued through a breach of the building contract. Plaintiffs recovered and defendants prosecute the appeal.

Plaintiff Ladislaus Neuwirth is the pastor and his coplaintiffs are trustees of the Roman Catholic Slovak Church of the Holy Trinity in St. Louis, and defendants, Moydell and Piskulic, are sureties on the contractor's bond. It appears that the church, desiring to erect a parish school building on the south side of

Rutger street, between Eleventh and Thirteenth streets, contracted with Stephen Harik, a builder, to furnish the materials and construct the building, for the consideration of $6000. The contract was entered into on the first day of June, 1910, and the bond in suit was executed by Harik, as principal, together with the two defendants, as sureties, in the penal sum of $3000, contemporaneously therewith. Harik failed to complete the building and the plaintiffs were required to pay out something more than $1000 in excess of the contract price in discharge of lien claims against it. This suit proceeds against the sureties to compensate the loss entailed through the default of Harik, the builder.

Among other things, the building contract makes the plans and specifications for the building parcel thereof, and the bond is conditioned for the faithful performance of the contract. Defendants, in their answer, set forth numerous changes and alterations in the construction of the building, which were made without regard to the provisions of the contract and at variance from the specifications, without their knowledge or consent, and assert that they are discharged as sureties because of these. It is entirely clear that, while all of the matters and things set forth in the answer as changes going to destroy the identity of the contract may not be regarded as such, others do so. All of those changes are detailed in plaintiff's evidence and stand conceded in the case, in that the parish priest, Reverend Ladislaus Neuwirth, who, it appears, was the active agent of plaintiffs, frankly testified to each.

The building contemplated is a two-story-and-basement brick school building, and the contract includes, too, the repair of certain sidewalks about it. It appears that, while the building was in course of construction, a city inspector interposed an objection to the sufficiency of one of the walls. Because of this, plaintiff entered into a new and independent contract with Harik, the builder, to erect a fire wall adjacent

to the old church building for the sum of fifty-six dollars, which was paid. This fire wall was not mentioned in the plans and specifications nor stipulated for in the original building contract.

Then, too, the plans and specifications called for plastered ceilings in the school building, and it appears the contractor put in two of the classrooms downstairs corrugated iron ceilings instead. However, he did this voluntarily and without any agreement or request from plaintiffs to do so.

The plans and specifications required the builder, Harik, to repair the old sidewalk and such was parcel of the contract; but, instead, after the work was in progress, plaintiffs entered into a new agreement with Harik, whereby a concrete sidewalk was substituted, at the agreed price of $125, which was paid. Touching this matter, Father Neuwirth testified: "Instead of having the sidewalk repaired, I had the brick sidewalk torn up and had a granitoid sidewalk made."

Another change in the terms of the original contract, made by agreement between plaintiffs and the builder, pertains to the lathing of a partition on the first floor of the building. Concerning this the parish priest testifies as follows: "On the north side of that hall between it and the classrooms is a partition. This partition was made fireproof with metal lath and studding. According to the specifications that was to be ordinary wooden studding and plastering and wooden laths. Mr. Harik didn't pay for the change in that partition; I paid for it. The money was received by one of the old-time parishioners who did the work; Harik's plasterers did the plastering and Harik's carpenters put in the partition and lath. The metal lath and metal studding for that partition were furnished by John Nitka, a parishioner. I paid seventy-five dollars for the metal laths and studding." It appears from this that plaintiffs substituted the metal lath and studding at an expense of seventy-five dollars, with the

consent of the contractor, whose workmen put in the studding and lath so furnished.

On the second floor of the building a partition was changed—that is, moved eastward about three feet—and thus varied from the specifications, in order to make the room on the second floor at the head of the stairs larger. In this connection, also, a double door called for in the specifications between a large room called a hall and a room at the head of the stairs was changed to a single door of the same shape as the small doors downstairs. These changes plaintiffs says were done by agreement with the builder and at a cost of five dollars.

In the original plans a door was designed on the first floor, opening into the back of the church, but when the fire wall was constructed, a change was made with respect to this. However, no charge was made for this change.

Father Neuwirth also testifies that two doors were put in, one upstairs and one downstairs, different from those mentioned in the specifications, and "Harik charged eight dollars for changing or constructing each of these doors. I paid him for it. . . . One of these doors is entering from a room to the classroom. The other door opened from the lower classroom to the yard on the east side of the building, so that in case the fire would come, that the children could go out fast enough to save their lives."

The building contract provided in substance that the superintendent shall be at liberty to make any deviations from or alteration in the plan and construction of the building; but this provision is limited by another in the bond executed by the sureties.

The condition of the bond is as follows:

"The condition of the above obligation is such, that, whereas, the said Stephen Harik has on the day of the date of these presents executed and entered into a certain contract for the erection of certain build-

ings in said contract described, which contract is hereto annexed. Now, if the said Stephen Harik shall well and truely perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and any alterations and additions in said contract, provided such alterations and additions, if any such be made, shall not exceed in extra costs the sum of eight and 00-100 dollars ($8).

"We, the said sureties, hereby expressly waiving all rights to be notified of, or by any further act to give our assent to, such alterations and additions and acknowledging ourselves to be bound unconditionally for the faithful performance of said contract price and of such alterations and additions within limit of said contract price and of such extra costs aforesaid, and shall keep the said Rev. Ladislaus Neuwirth, pastor, and John Palubiak, Andro Spavor and J. P. Gabries, trustees, of the Roman Catholic Slovak Church of the Holy Trinity, harmless and indemnified from and against all and every claim, demand, judgments, liens and mechanics' liens, costs, etc."

The case concedes that defendants' sureties on the bond were in nowise notified with respect to the several changes and variations from the original specifications and plans of construction detailed in the contract and that such changes were made between the original parties to the building contract without their knowledge or consent. Because of this, it is urged the sureties are discharged, and it is entirely clear that this argument must prevail. It is undoubted that there is no implied obligation on the part of the surety that he has undertaken more or other than that expressed in his contract, for it is only to the extent and in the manner and under the circumstances pointed out in the contract to which he has become a party that he is bound, and not further. Therefore, if the original parties to the contract make changes or alterations

which go to vary and alter its terms, through substituting other matters for those called for in the contract, so as to destroy its identity in the matter of performance, without the consent of the surety, he is thereby relieved and discharged from the secondary obligation undertaken, on the ground that the identity of the contract on which he assumed to respond has been destroyed through the act of the original parties without consulting him. This doctrine is constantly applied in relief of the surety on builders' bonds, as will appear by reference to the following cases in point: See Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; Reissaus v. Whites, 128 Mo. App. 135, 106 S. W. 603; School District v. Green, 134 Mo. App. 421, 427, 114 S. W. 578; Utterson v. Elmore, 154 Mo. App. 646, 136 S. W. 9.

But the principle is without avail in so far as the fire wall above referred to it concerned. The fire wall that was built at the instance of the city inspector is to be put aside entirely, because it stands on the ground of a separate, independent contract subsequently made, which in nowise varied the terms or tended to destroy the identity of the original contract for which the sureties stood sponsor. The original contract between the parties did not contemplate nor refer in any manner to the fire wall. There was no variation from the plans or specifications in so far as this matter is concerned. The city authorities required an additional wall to be installed adjacent to the old church building and plaintiffs contracted with the builder to erect it for the price of fifty-six dollars. This was a new and independent contract subsequently made, though it was between the same parties and on the same property. As said in Beers v. Wolf, 116 Mo. 179, 187, 22 S. W. 620, "A subsequent independent agreement of the principal, to do other and different work for the same person, would not discharge the surety; because in such case the contract of the surety would remain the same." In other

words, as the thought is expressed by the Kansas City Court of Appeals, where the different matter does not consist of a change of that provided for or contemplated by the contract but is something additional not included in the contract, then it is an independent transaction and does not affect the contract and consequently does not release the surety. [Fullerton Lumber Co. v. Gates, 89 Mo. App. 201, 208.] It is obvious the additional fire wall constructed outside of the building and adjacent to the old church entailed no change or alteration in the original contract, for nothing was specified as to that whatever in that instrument, and the work proceeded under a separate independent contract between plaintiffs and the builder which was wholly independent of the contract to which the sureties were bound.

Touching the matter of the installation of the two corrugated iron ceilings in the first-story rooms of the school building, it is to be said, too, that no discharge of the sureties may be predicated on this. There was no variation of the original contract by any act of plaintiff in so far as this subject-matter was concerned. It is true the original contract and specifications call for plastered ceilings, but plaintiff was in nowise instrumental in varying that term or in substituting something other therefor. The contractor, of his own volition installed the corrugated iron ceilings instead, without a request therefor or an agreement on the part of plaintiff and made no extra charge concerning the same. While this obviously reveals a breach of the contract on the part of the contractor for which plaintiffs might pursue him and the sureties, too, at law, if they chose to do so, it in nowise operates a change of the original contract through the co-operation as by agreement of the parties. [See Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629, 647, 78 S. W. 1014.]

But the other changes above detailed stand upon an entirely different ground, for they not only pertain to the very subject-matter stipulated for between the parties, but they were made through separate agreements between them which go to vary the original terms by substitution of other things and annex additional responsibilities on the respective parties who made them with respect to such substitution. This being true, they destroy the identity of the original contract for the faithful performance of which the sureties were bound. It is true the original contract authorized changes and alterations to be made at the instance of the superintendent, but this provision is limited ir its scope by the express words of the bond above quoted, which the sureties signed. No one can doubt that the bond and the builder's contract are to be read and construed together, as constituting the entire undertaking, in so far as the sureties are concerned. It is altogether clear, and, indeed, has been heretofore expressly decided on the identical language employed in the present bond, that the changes or variations from the original contract thus authorized should not exceed, in all, the amount specified in the bond—that is, in the instant case, $8. In event changes and alterations were made not exceeding such amount, the suerties were unconditionally bound, even though no notice to them were given, for they had consented to such changes on executing the bond. [See Bagwell v. American Surety Co., 102 Mo. App. 707, 716, 717, 77 S. W. 327.] But here the changes and alterations from the express terms of the contract exceed by far the amount so limited. The contract provided for the repair of the old sidewalk, but instead plaintiffs, under an agreement with the contractor, substituted for such repairs a concrete sidewalk, at a cost of $125. Then, too, the specifications called for wooden studding and laths in one partition and for this there was substituted by plaintiffs, with the consent of the builder, metal lath

and studding in order to render it fireproof, at a cost of $75, which was paid by plaintiff to one of the parishioners. On the second floor, one of the partitions was changed, moved eastward three feet, different from that specified in the contract, in order to render the room larger, also a double door called for in the specifications was changed into a single door. These changes were made by agreement between plaintiff and the builder at a cost of $5. A door designed on the first floor was also omitted, then two other doors were installed, different and distinct from those called for in the specifications, for which the contractor charged and was paid $8 each.

It is entirely clear that these changes, though they were paid for at the time as extras, destroyed the identiy of the contract and thereby discharged the sureties. Each of these changes last enumerated substituted something different and distinct for that stipulated for between the parties in the contract and in this the contract was so changed as to destroy its identity, and this, too, without the consent of the sureties, for they consented to such changes only as should be made not exceeding $8 in cost. Under the established rule of decision which obtains in this State in similar cases, the sureties on the bond are discharged because of these changes, for, as the Supreme Court says in Beers v. Wolf, 116 Mo. 179, 187, 188, 22 S. W. 620, "These changes destroy the identity of the contract, and that is sufficient to discharge the sureties." [See, also, to the same effect, Reissaus v. Whites, 128 Mo. App. 135, 106 S. W. 603; School District v. Green, 134 Mo. App. 421, 427, 114 S. W. 578.] This being true, plaintiffs are not entitled to recover against the sureties and the judgment should, therefore, be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.