## J. M. HUMPHRIES CONSTRUCTION COMPANY, Plaintiff-Appellant,

### v.

## CITY OF MEMPHIS, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

April 27, 1981.

Application for permission to appeal Denied, by Supreme Court Nov. 2, 1981.

George E. Morrow, William J. Landers, Memphis, for plaintiff-appellant.

Clifford D. Pierce, Jr., E. Brady Bartusch, Memphis, for defendant-appellee.

NEARN, Judge.

This is an appeal from an order granting summary judgment as to only one defendant but made final pursuant to Rule 54.02 T.R.C.P. Hence, the judgment as to that defendant is final and appealable as of right pursuant to Rule 3 T.R.A.P.

Plaintiff, J. M. Humphries Construction Company, was the successful bidder on a City of Memphis project to lay sewer pipes from the mainland to "Mud Island" located in the Mississippi River at the riverfront of the City of Memphis. The co-defendant Clark, Dietz Engineers, Inc., furnished the engineering plans upon which the bids were

based. According to the contract Humphries was to be additionally paid for any "extra" work not covered by the contract and approved by the City. Humphries performed what it considered to be "extra" work not covered by the contract; but, the City of Memphis refused to pay for said work on the grounds, *inter alia*, that the work was not "extra" but included in the contract. Humphries sued the City for breach of contract and sued Clark, Dietz Engineers for negligent misrepresentation in drafting the plans and specifications for the project, and for failure to exercise due professional care.

Summary judgment made final, was granted in favor of the City of Memphis only. The matter is yet pending as to the other defendant.

We are of the opinion that the Trial Judge committed no error in granting summary judgment in favor of the City of Memphis. In his memorandum opinion the Trial Judge sets forth the problem, the position of the parties and correctly applies the controlling law. Accordingly, we will adopt his memorandum opinion as our own and copy as follows:

"One of the two defendants, the City of Memphis, has filed a motion for a summary judgment which avers that the complaint of the plaintiff J. M. Humphries Construction Company fails to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact.

"The plaintiff denies that the City's motion should be sustained.

"The Court will sustain the motion.

"The plaintiff seeks to recover damages against the City of Memphis and Clark, Dietz Engineers, Inc., which in correspondence in the file is referred to as Clark, Dietz and Associates and Clark, Dietz And Associates—Engineers, Inc., to recover alleged damages arising out of a contract for the plaintiff to emplace in a trench beneath the Wolf River Harbor a 40 inch diameter sewer line in accordance with plans, specifications and drawings furnished by the City and prepared by

Clark, Dietz Engineers, Inc. who had been engaged by the City as its engineers for the job. The documents were submitted to all prospective bidders, and they set out in detail all engineering features intended for explanation of the project, including inter alia, the type of weights to be placed on the pipe, the spacing of the weights and the type of wrapping to be placed between the weights and the pipe. Humphries was awarded the contract on its bid of $1,253,-460.00. The contract was executed by the parties in March 1978. The only amount in dispute is that for extra work which Humphries states was necessary to make adjustments as to weights in order to secure the pipe in place under the water of the Wolf River. Humphries states it is entitled to $120,000.00 for this work on grounds of quantum meruit or unjust enrichment.

"A polyethylene pipe as the force main was to be placed under the Wolf River, to connect to a steel pipe at the Bayou Gayoso Pump Station, with weights attached, to sink to the bottom of a tunnel which was to be backfilled. The weights were to be spaced at 15 feet intervals along the pipe under the river.

"Humphries alleges that prior to submerging the pipe it discovered it would be impossible for the weights, as set out in the drawings and specifications, to sink the pipe to the bottom of the tunnel, and hold it in place below the required elevation until the backfill was placed over the pipe.

"The objection to complying with the specifications of the City as expressed by the plaintiff by letter of 9 September to Clark, Dietz and Associates, was that as they were preparing to launch the 40 inch polyethylene force main across the Wolf River they observed that the soil is a very fine silt, and upon excavation of the trench with a dragline, the disturbed soil reacted like silty clay, and that when disturbed under water it acted like a liquid; that the next day it was noted the trench was filled with a soupy sediment

that could be detected with a plumb bob as the weight settled to the bottom of the trench; that the sediment is a layer of suspended silt particles and a buildup of the heavier particles that have settled to the bottom. Further that the lower portion of the sediment may appear as a solid, but that it will react as a fluid mass and that the fluid mass with its calculated specific gravity would not allow the force main with the weights as designed to reach the trench bottom, and would cause the pipe to flow above the upper limit elevation as established by the Corps of Engineers when the backfill material would be placed.

"The plaintiff states that the loose silt sediment existed several feet thick over the bottom of the river and collected in the pipe trench readily, since it is 18 feet below the river bottom. The plaintiff avers in its Exhibit C, attached to the affidavit of J. M. Humphries, that agitation of the water from construction machinery, passing river traffic, flow from storm water ditches, and gravity cause the flow of the silt sediment toward the pipe trench. The affidavit states that an attempt was made to clean the material from the trench but that due to its fluid nature it could not be excavated.

"Richard H. Price, the Memphis Branch Manager of Clark, Dietz and Associates, responded by letter of 16 September 1976, stamped received 18 September 1976, stating that it was the opinion of Clark, Dietz that the pipe as designed would remain stationary installed as shown in the plans, and that they would agree to the area around the pipe and up to the elevation of 168 being filled with 3 inch stone. He stated that it would be difficult to sink the pipe through the material that was then present, but that this was considered to be a construction problem, 'since the plans and specifications indicate only the final position and surrounding conditions of the pipe.' He stated they do not in any way prescribe how this position or condition will be attained.

"By letter of 30 September 1976, 21 days after the letter of 9 September 1976, J.

M. Humphries, President of the plaintiff company, wrote Mr. Price stating in part: 'It is imperative that we do not let the favorable conditions for the river crossing that exist at this time slip away while waiting for a decision on the additional ballast. Therefore, we have proceeded without delay to provide the minimum ballast necessary for this crossing and expect to install the pipe in the river by the middle of October. We will present our request for a Change Order to cover this extra work at a later date.'

"The City in its affidavit in support of its motion relies on Article 20 and Article 59 of the contract between the parties. The portion of Article 20 on which the city relies, states as follows:

"Inspectors and Resident Engineers are not authorized to act for the Owner in giving orders for the Owner for extra or additional work, either in writing or verbally.

"This paragraph is underlined in the contract.

"ARTICLE 59. PAYMENT FOR EXTRA WORK:

"Extra Work, which is Work that does not appear in the Contract as specified items accompanied by unit prices, and is not included in the prices bid as incidental work for other items in the Contract, shall be paid for a lump sum price or at unit prices agreed upon by the Contractor and the Owner.

"Article 28 of the contract between the parties provides as follows:

"ARTICLE 28. VISITING SITE:

"The bidder shall visit the site of the proposed Work, that he may fully understand the facilities, difficulties and restrictions attending the execution of the Contract. He will be allowed no additional compensation for his failure to be so informed.

"Article 3 of the contract provides in part as follows:

"ARTICLE 3. DETAIL DRAWINGS AND INSTRUCTIONS:

"The Engineer shall furnish, with reasonable promptness, additional instructions, by means of drawings or otherwise, necessary for the proper execution of the Work. All such drawings and instructions shall be consistent with the Contract Documents, true developments thereof, or reasonably inferable therefrom. The Work shall be executed in conformity therewith and the Contractor shall do no Work without proper drawings and instruction. In giving such additional instructions, the Engineer shall have authority to make minor changes in the Work, not involving extra cost, and not inconsistent with the purposes of the project or the directions of the Director of Public Works/City Engineer.

"Article 21 of the contract provides as follows:

"ARTICLE 21. CLAIMS FOR EXTRAS:

"If the Contractor claims that any instructions by drawings or otherwise, involve extra cost under this Contract, he shall give the Engineer written notice thereof before proceeding to execute the Work, and, in any event, within two weeks of receiving such instructions. No such claim shall be valid unless so made.

"The plaintiff asserts that government contracts are held to contain a warranty that satisfactory performance is possible and the government is liable for an increase in cost by reason of defects in the specifications, and his submitted briefs citing cases outlining its argument. These cases have been read by the Court.

"The Court finds that by virtue of the aforesaid Article 28 and the holding of the Supreme Court of the State of Tennessee in the case of *W & O Construction Company, Inc. v. City of Smithville*, 557 S.W.2d p. 920, the City is entitled to a summary judgment. That suit was brought by a contractor to recover extra costs for rock removal under a building contract with the City of Smithville for the erection of a waste water treatment plant.

" 'The complaint alleged that in excavating the construction site plaintiff encountered a large quantity of rock which had been unanticipated, and which plaintiff had been led to believe did not exist because of some core drillings done by an engineering firm prior to the letting of bids. The project engineer called attention to these core drillings in the instructions to bidders, but it is clear from the plans and specifications that ultimate responsibility for subsurface conditions rested upon the contractor, not upon the owner or the project engineer.

" 'In the original complaint, plaintiff claimed a breach of paragraph 21 of the General Conditions, which provided that if materially different subsurface conditions were found from those shown on the plans and specifications, the contractor should give notice to the project engineer before the conditions were disturbed. The contract provided that the engineer would investigate the conditions, and that if he found that these so warranted, he would make appropriate changes in the plans or specifications. Any increase or decrease in cost was to be adjusted as provided in paragraph 17 of the General Conditions. The latter paragraph set out methods of computing additional costs but expressly provided that changes in the work were not authorized without express written approval from the owner.

" 'Paragraph 22 of the General Conditions also disallowed claims for extra work or costs unless done pursuant to written order of the architect, approved by the owner.'

"The Court stated:

" 'Generally such provisions in building contracts are valid and binding according to their terms. See *Bannon v. Jackson*, 121 Tenn. 381, 117 S.W. 504 (1908). Such provisions, of course, may be altered, abrogated or waived, but facts showing such modifications must be alleged. See 13 Am.Jr.2d, Building

and Constructions Contracts, Sec. 22–25; Annot., 2 A.L.R.2d 620 (1965) (private building contracts); Annot., 1 A.L.R.2d 1273 (1965) (public contracts).

" 'The original complaint alleged that the engineer and owner were notified of the additional rock which had been encountered by plaintiff, but at no point was authorized or agreed upon. Plaintiff apparently performed the contract, was paid the agreed price, and, according to its complaint, only claimed a breach because of the noncompliance with paragraph 21 of the General Conditions, above referred to. The complaint alleged that written notice was given to the project engineer. In addition plaintiff sought to attach to the complaint, without explanation or elaboration, some fifteen letters which passed between plaintiff, the engineer and some of the federal funding agencies over a period from July 1973 to January 1976. It was these letters which were stricken by the trial judge, because the facts which they purported to show were nowhere stated in the complaint, nor were these the documents upon which the claim was founded under Rule 10, T.R.C.P. The complaint merely stated that these documents were 'material' to the rock encountered and to the notice given.

"The Supreme Court concluded:

" 'Although we are satisfied that the trial judge correctly sustained defendant's motion to strike this correspondence, we have examined the contents thereof. It affirmatively shows that no written change order was ever authorized by the owner, or by the federal funding agencies, and that no agreement was ever made by the owner or by any responsible funding agency to compensate the plaintiff for the removal of rock. Indeed, on at least two occasions, officials of the funding agencies pointed out the failure of the contractor to comply with the contract provisions under which a change order might have been obtained and additional compensation authorized.

" 'With or without the striken material, we are of the opinion that the complaint fails to state a breach of contract in that it fails to show that any written change order was ever obtained, nor are there any facts alleged showing waiver, modification or abrogation of this express contract requirement with which an experienced building contractor, such as plaintiff, must have been familiar.'

"The Court finds that the position of the plaintiff in *W & O Construction Company, Inc.* in alleging that a large quantity of rock had been unanticipated and that the problem found was a subsurface condition analogous to the under-water condition found by the plaintiff in this cause.

"The Court further finds as the Supreme Court found in *W & O Construction Company, Inc.* that no written change order was ever authorized by the owner.

"The Court finds that in Tennessee the law is governed by the holding and this motion in *W & O Construction Company, Inc. v. City of Smithville.*"

The result is the judgment below is affirmed with costs of appeal adjudged against appellant and surety.

Done at Jackson in the two hundred and fifth year of our Independence and in the one hundred and eighty-sixth year of our Statehood.

MATHERNE and SUMMERS, JJ., concur.